**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Maria Velarde ANGUIANO, Defendant-Appellant.**

No. 87-5319.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 5, 1988.

Decided May 5, 1989.

Kenneth D. Noel, San Diego, Cal., for defendant-appellant Maria Velarde Anguiano.

Bruce R. Castetter, Asst. U.S. Atty., Chief, Appellate Section, Crim. Div., San Diego, Cal., for plaintiff-appellee U.S.

Before NELSON, BEEZER and HALL, Circuit Judges.

NELSON, Circuit Judge:

Maria Velarde Anguiano appeals her conviction for conspiracy to possess marijuana with intent to distribute, a violation of 21 U.S.C. §§ 841(a) & 846. For the reasons set forth below, we conclude that Anguiano's conviction must be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

During the spring of 1986, Anguiano spoke several times with a confidential government informant named Miguel Angel Nicholas. The purpose of these discussions was to arrange the sale of a large quantity of marijuana. The money for the purchase was to come from ten individuals, including Anguiano and an individual named Arturo ("Joe") Cuevas. Anguiano gave Nicholas $850 to purchase a sample before arranging the larger sale. Nicholas told Anguiano that he would arrange for her to meet with the owner of the marijuana.

The meeting took place on June 10, 1986. Anguiano and an associate ("Bernardo") met with Nicholas and undercover DEA agent Victor Wallace, who was posing as the owner of the marijuana. Agent Wallace told Anguiano that he had four tons of marijuana to sell, and that the price per kilo would vary depending on how much Anguiano wanted to buy. Anguiano offered to buy 200 pounds, but Wallace told her that he would not deal in such small quantities. Anguiano then agreed to purchase one ton of marijuana for $825,000.

On June 12, 1986, Anguiano again met with Agent Wallace. According to Agent Wallace, Anguiano told him that she had the $825,000, which she had collected from a group of people who had combined their money in order to finance the purchase. They arranged to complete the deal at Anguiano's home the next day.

Wallace arrived at Anguiano's home at about 1:30 PM on June 13. Anguiano told him that she had some people waiting in two nearby houses. She also told him that part of the money was in one of the nearby houses and that she was waiting for the rest to be delivered. While they were waiting, Bernardo arrived and said that the people with the money would not release it until they had first seen a sample of the

marijuana. Anguiano became upset and told Bernardo to "go check with Arturo about the money." Bernardo returned shortly thereafter and told Anguiano that Arturo said they would not release the money without a sample. Anguiano then left, saying she would speak to Arturo.

Anguiano returned a few minutes later and said that the money had not yet arrived and that Arturo insisted on a sample. Agent Wallace produced a brown paper bag containing four ounces of marijuana. After examining the sample, Bernardo brought part of it over to Arturo, but he soon returned saying that Arturo wanted to see the whole sample. Agent Wallace became suspicious of what was going on and decided to leave. Anguiano said that she hoped to be able to put the deal together within a few days.

On the morning of June 16, Wallace telephoned Anguiano, who said that everything was ready at her end. Wallace and Anguiano agreed to meet at a restaurant later that day. Anguiano went alone to the restaurant, where she spoke with Agents Wallace and Calderon. She told them that she was now ready to buy the ton and that two people would be at her house with the money. Wallace agreed to go to Anguiano's house that evening.

Wallace arrived at Anguiano's house at about 6:30 PM. Anguiano said that the people with the money were upstairs. She called upstairs for "Mike," and codefendant Miguel Reynoso came down. Miguel said that they had the money, but that they wanted to see the marijuana first. Mike called upstairs to his brother, codefendant Armando Reynoso, who came down with a briefcase and a shaving kit bag, both of which contained money. Wallace examined the bags and noted that they contained a total of $195,000 in cash.

Armando then told Wallace that he only wanted to buy 1,000 pounds of marijuana for $500,000. According to the government, Anguiano told Wallace that if he agreed to sell Armando the 1,000 pounds, then she would guarantee the money to buy the remaining 1,000. Wallace agreed to the sale. Wallace then telephoned Agent Calderon, who spoke with Anguiano. Calderon asked her why they only had $200,000. Anguiano said that the Reynoso brothers had gotten nervous and put some of the money somewhere else. According to the prosecution, she also said that if Calderon would agree to sell only $200,000 worth of marijuana, she would agree to buy the rest.

The Reynoso brothers, Anguiano, and Wallace then all drove to the parking lot of a local shopping center, where the DEA agents had parked a truck loaded with marijuana. When they arrived, Anguiano, Miguel, and Armando were all arrested.

On June 27, 1986, the government filed a two count indictment against Anguiano. The first count charged that Anguiano had conspired to possess marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & 846. The second count charged Anguiano with attempted possession of marijuana with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) & 846.

At the close of the trial, Anguiano requested that the jury be instructed concerning multiple conspiracies. Specifically, Anguiano pointed out that the evidence supported the existence of two conspiracies, one relating to the June 13 deal with Arturo Cuevas and Bernardo, and one concerning the June 16 deal with the Reynoso brothers. Accordingly, Anguiano requested instructions to the effect that if the jury found that a particular defendant was a member of a conspiracy other than the one charged in the indictment, then that defendant must be acquitted. The government argued that the evidence indicated only one overall conspiracy, and that, at any rate, the indictment charged Anguiano with a conspiracy ending June 16, not one ending June 13. The trial court agreed with the government and refused to give the instructions.

The jury retired to deliberate on July 17, 1987, and returned a verdict on July 23, 1987. Anguiano was convicted on the conspiracy count, but she was acquitted on the charge of attempted possession. Anguiano has filed a timely appeal to this court.

## DISCUSSION

### A. *Multiple Conspiracies Instruction*

#### 1. Standard of review

A defendant is entitled to a multiple conspiracies instruction only if the defendant's theory of multiple conspiracies is "supported by law and has some foundation in the evidence." *United States v. Linn*, 862 F.2d 735, 743 (9th Cir.1988) (quoting *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir.1985)). Although our previous cases have not explicitly stated the applicable standard of review, *see, e.g., United States v. Rabb*, 752 F.2d 1320, 1325 (9th Cir.1984) (noting that the standard of review for two other issues discussed was abuse of discretion, but failing to state standard of review for evaluating refusal to give multiple conspiracies instruction), *cert. denied*, 471 U.S. 1019, 105 S.Ct. 2027, 85 L.Ed.2d 308 (1985), we conclude that the issue of whether the evidence was sufficient to support the giving of a multiple conspiracies instruction should be subject to *de novo* review. This conclusion is based on several considerations. First, we note that the issue of whether the evidence was sufficient to sustain an instruction concerning a particular defense theory is generally a question of law that is reviewed *de novo*. *See United States v. Ibarra–Alcarez*, 830 F.2d 968, 973 (9th Cir.1987). Second, our cases concerning the issue of multiple conspiracies have appeared to use implicitly a *de novo* standard of review. *See, e.g., United States v. Eubanks*, 591 F.2d 513, 517–18 (9th Cir. 1979); *Rabb*, 752 F.2d at 1325.

Although we thus review *de novo* the trial court's refusal to give a multiple conspiracies instruction, we also note that even if the evidence would have supported such an instruction, the failure to give it is error only if the instructions as a whole, considered in the context of the entire trial, did not fairly and adequately cover the issues. Thus, the overall adequacy of the instructions is reviewed in light of "the entire charge in the context of the whole trial," *Rabb*, 752 F.2d at 1325, and so long as the instructions "fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion," *United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir.1985); *see also Linn*, 862 F.2d at 743. Accordingly, it is not error to reject a multiple conspiracies instruction "if the other instructions, when viewed in their entirety, cover that theory." *Ibarra–Alcarez*, 830 F.2d at 973.[1]

#### 2. Discussion

We agree with Anguiano that the evidence presented at trial indicates the existence of two separate conspiracies. Indeed, the government appeared to concede as much when it acknowledged at oral argument that it could not name one individual (other than Anguiano or government agents) who participated in both the June 13 and June 16 transactions. Nonetheless, we conclude that the district court did not err in refusing to give an instruction concerning multiple conspiracies.

A multiple conspiracies instruction is generally required where the indictment charges several defendants with one overall conspiracy, but the proof at trial indicates that a jury could reasonably conclude that some of the defendants were only involved in separate conspiracies unrelated to the overall conspiracy charged in the indictment. *See Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *Eubanks*, 591 F.2d at 518. The instruction is required because, in such a situation, there is a possibility of prejudicial variance between the indictment and the trial proof. *Id.* The variance may be prejudicial in a number of ways, but the

---

1. With regard to the court's refusal to give a multiple conspiracies instruction, we reject the government's suggestion that Anguiano failed to object properly. The record reveals that, at a hearing concerning jury instructions, defense counsel both explained the need and the authority for his proposed instructions, and specifically objected when the instructions were not given. Accordingly, Anguiano has properly preserved this issue for appeal. *See* Fed.R.Crim.P. 30. However, as noted below, *see infra* at 1318–19, we agree with the government's contention that Anguiano failed to raise the issue of a nonunanimous verdict.

problem that is of concern here is the possibility of transference or "spillover" of guilt.[2] *See United States v. Morse,* 785 F.2d 771, 775 (9th Cir.), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2925, 91 L.Ed.2d 553 (1986); *see also United States v. Richerson,* 833 F.2d 1147, 1155 (5th Cir.1987). In this type of situation, one of the defendants argues that he or she was only involved, if at all, in a minor conspiracy that is unrelated to the overall conspiracy charged in the indictment, and that a multiple conspiracies instruction is required in order to ensure that there is no "spillover" of guilt from one defendant to another. *United States v. Cambindo Valencia,* 609 F.2d 603, 625 (2d Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980). However, there is no problem of spillover when, as in this case, the defendant stands trial alone. *See United States v. Corey,* 566 F.2d 429, 431 n. 3 (2d Cir. 1977); *United States v. Sir Kue Chin,* 534 F.2d 1032, 1035–36 (2d Cir.1976). Accordingly, Anguiano was not entitled to a multiple conspiracies instruction on this basis.

■ Anguiano argues, however, that an instruction concerning multiple conspiracies was still required in her case in order to protect her right to a unanimous jury verdict. *See United States v. Echeverry,* 719 F.2d 974, 975 (9th Cir.1983) (specific unanimity instruction required where "there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts"), *modifying* 698 F.2d 375 (9th Cir. 1983). This argument is without merit.

Anguiano's argument confuses a specific unanimity instruction with a multiple conspiracies instruction. The two sets of instructions are not the same. First, as noted above, a multiple conspiracies instruction is generally designed for trials involving multiple defendants engaged in multiple conspiracies, not for trials of lone defendants who are worried that the jury may not agree upon the same set of facts. Second, the instructions requested by Anguiano would not have cured the unanimity problem of which she complains. Anguiano asserts that count 1 of the indictment permitted the jury to convict her for either the June 13 or the June 16 conspiracies, and that there is therefore a risk that the jurors could have convicted her without agreeing upon which conspiracy Anguiano had participated in. However, the proposed instructions, which merely alerted the jury to the fact that it must consider the possible existence of a conspiracy other than "the conspiracy charged in Count 1," would not have removed the alleged ambiguity surrounding *which* conspiracy is alleged in count 1. The appropriate instruction to cure the asserted deficiency would have been an instruction that the jurors must unanimously agree on the dates of the conspiracy in which they found the defendant participated. *See Echeverry,* 698 F.2d at 377.

### B. *Specific Unanimity Instruction*

#### 1. Standard of review

The record reveals that Anguiano did not request a specific unanimity instruction at

---

**2.** In *United States v. Morse,* 785 F.2d 771, 775 (9th Cir.), *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2925, 91 L.Ed.2d 553 (1986), we identified three ways in which a variance between the indictment and the trial proof may be prejudicial: 1) inadequate opportunity to prepare a defense and exposure to unanticipated evidence at trial, *Berger v. United States,* 295 U.S. 78, 83 [55 S.Ct. 629, 631, 79 L.Ed. 1314] (1935); 2) deprivation of the right to be tried only on charges presented in an indictment returned by a grand jury, *Stirone v. United States,* 361 U.S. 212, 218–19 [80 S.Ct. 270, 273–74, 4 L.Ed. 2d 252] (1960); and 3) exposure to prejudicial evidentiary spillover, *Kotteakos v. United States,* 328 U.S. 750, 774 [66 S.Ct. 1239, 1252, 90 L.Ed. 1557] (1946).

For several reasons, only the last of these three forms of prejudice is conceivably relevant in this case. First, during the trial, Anguiano cited only *Kotteakos* as authority in support of her argument that the jury should have been instructed with regard to multiple conspiracies. Second, and more importantly, we are doubtful that either of the first two forms of prejudice could be cured by a multiple conspiracies instruction. Indeed, the instruction is designed precisely to cure the problem of *Kotteakos* "spillover"; it would not cure either the problem of surprise evidence or the problem of trial on charges that were not submitted to a grand jury.

trial. Indeed, at no point during the hearing below concerning the jury instructions did Anguiano even so much as raise the issue of potential nonunanimity. Instead, Anguiano insisted that she was entitled to an instruction concerning multiple conspiracies, and cited *Kotteakos* as supporting authority. Under these circumstances, we review the failure to give a specific unanimity instruction only for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Bryan,* 868 F.2d 1032, 1038–39 (9th Cir. 1989); *United States v. Payseno,* 782 F.2d 832, 834 (9th Cir.1986); *United States v. Jarabek,* 726 F.2d 889, 903 (1st Cir.1984) (where defendant had not objected to charge on the particular grounds asserted on appeal, review was only for plain error). "Plain error" will be found only if the error was "highly prejudicial" and there was a "high probability that the error materially affected the verdict." *Bryan,* 868 F.2d at 1038–39. Therefore, in reviewing this issue, we are mindful of the fact that "[r]eversal of a criminal conviction on the basis of plain error is an exceptional remedy, which we invoke only when it appears necessary to prevent a miscarriage of justice or to preserve the integrity and reputation of the judicial process." *United States v. Bustillo,* 789 F.2d 1364, 1367 (9th Cir.1986). Furthermore, we have previously noted that only "[r]arely will an improper jury instruction justify a finding of plain error." *United States v. Bordallo,* 857 F.2d 519, 527 (9th Cir.1988), *modified on other grounds,* 872 F.2d 334 (9th Cir.1989).

### 2. Discussion

■ We have held that where it appears that "there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts," an instruction should be given to the effect that the jury may not convict unless it "unanimously agree[s] to a particular set of facts." *Echeverry,* 719 F.2d at 975. However, in the ordinary case, a general instruction that the verdict must be unanimous will be sufficient to protect the defendant's rights. *Id.* at 974; *United States v. Ferris,* 719 F.2d 1405, 1407 (9th Cir.1983).

■ This court has identified a number of situations in which there is a "genuine possibility of juror confusion," thus necessitating a specific unanimity instruction. First, the instruction is required in cases, such as *Echeverry* itself, where the jury actually indicates, by note to the court, that it is confused about the nature of the conspiracy charged. 719 F.2d at 975 ("The jury's written questions indicated their confusion concerning multiple conspiracies and should have alerted the trial judge to the potential for a nonunanimous verdict."); *see also United States v. Gordon,* 844 F.2d 1397, 1401–02 (9th Cir.1988). In the present case, however, there was no communication or other indication from the jury suggesting that it was in any way confused. Anguiano argues that such confusion is indicated by the fact that the jury convicted her of the conspiracy count, but acquitted her of the attempted possession count. This assertion is little more than speculation, *see Richerson,* 833 F.2d at 1155 (rejecting as speculative defendant's argument that lack of jury unanimity was indicated by his conviction on conspiracy count, but acquittal on substantive count), and it will not support a finding of plain error.

■ Second, the instruction may be required in cases where the indictment is sufficiently broad and ambiguous so as to present a danger of jury confusion. *See, e.g., Gordon,* 844 F.2d at 1401; *Payseno,* 782 F.2d at 836–37. In *Gordon,* for example, count I of the indictment charged the defendant with conspiracy to defraud the United States by: (1) engaging in various dishonest practices relating to the Trident Ballistic Missile Program; (2) covering up a grand jury investigation into this wrongdoing. We noted that, on its face, count I charged two different conspiracies, and that there was therefore a distinct possibility that the jury might convict on this count without unanimously agreeing as to which of the two conspiracies Gordon had participated in. 844 F.2d at 1401. Similarly, in *Payseno,* count II of the indictment simply required the jury to find that extortionate means had been used by the defendant;

there thus remained a possibility that the jury might convict without unanimously agreeing as to which of several alleged incidents of extortion Payseno had committed. 782 F.2d at 836–37.

However, we conclude that the indictment in this case was drafted with sufficient clarity so as to preclude the possibility of juror confusion as to what facts must be found before Anguiano could be convicted. Count 1 of the indictment, for which Anguiano was convicted, reads in part:

> Beginning at a date unknown to the grand jury and continuing up to and including June 16, 1986, within the Southern District of California, defendants MARIA VELARDE–ANGUIANO, ARMANDO FERNANDO REYNOSO, aka Alejandro Pena–Sanchez, and MIGUEL ANGEL REYNOSO did knowingly and wilfully combine, conspire, and agree together and with each other and with divers other persons unknown to the grand jury to knowingly commit offenses against the United States, namely, to knowingly and intentionally possess with intent to distribute marijuana....

We agree with the trial court's conclusion that the language of the indictment cannot reasonably be interpreted as inviting or allowing jurors to convict Anguiano for the alleged June 13 transaction. This is true for several reasons. First, June 16, not June 13, is given as the date on which the conspiracy ended. Second, the indictment also charges the Reynoso brothers as coconspirators, and both parties concede that there is no evidence linking the Reynoso brothers to the June 13 deal. Therefore, there is little danger that a jury would read the indictment as permitting it to convict Anguiano for an earlier alleged conspiracy in which the Reynoso brothers did not participate. Third, of the 12 overt acts charged in the indictment, nine relate to the June 16 transaction. The remaining three allege certain actions taken by Anguiano from June 10 to June 13, each of which led up to the ultimate transaction that occurred on June 16. While each of these three actions was also done in preparation for the failed June 13 deal, the indictment is carefully and narrowly worded to avoid any reference to joint activity during this time frame; these acts are alleged solely for their purpose in indicating the individual actions Anguiano had taken to set up the ultimate conspiracy.[3] The wording of the indictment therefore indicates that there was little potential for juror confusion. There was no plain error on these grounds.

■ Third, a specific unanimity instruction is required in cases where the evidence is sufficiently factually complex to indicate that jury confusion may occur. See United States v. Gilley, 836 F.2d 1206, 1211–12 (9th Cir.1988); Payseno, 782 F.2d at 837; United States v. Frazin, 780 F.2d 1461, 1468 (9th Cir.), cert. denied, 479 U.S. 844, 107 S.Ct. 158, 93 L.Ed.2d 98 (1986). In Payseno, the evidence indicated that the defendant may have committed three acts of extortion, each of which involved different victims, different methods, and different actors, and each of which occurred in different places and at different times. 782 F.2d at 837. We concluded that the evidence was sufficiently complicated to warrant a specific unanimity instruction. Id.[4]

By contrast, we conclude that the factual context of this case was not so complex as to suggest that juror confusion was likely.

---

3. Furthermore, the record indicates that the court offered to strike overt act #3, which refers to Wallace's visit to Anguiano's home on June 13. Counsel for the defense declined the offer, instead insisting upon a multiple conspiracies instruction.

4. As our dual citation to Payseno indicates, there is some overlap between these last two categories of cases. Indeed, the extent to which the factual complexity of a case is sufficient to confuse jurors can only be judged in light of the specificity and clarity of the charges made in the indictment. Indeed, the problems of factual complexity and indictment ambiguity both support the rule that a material discrepancy between the indictment and the trial proof may, in some circumstances, require a specific unanimity instruction. See Bryan, 868 F.2d at 1039; United States v. Feldman, 853 F.2d 648, 653 (9th Cir.1988) (quoting Frazin, 780 F.2d at 1468), cert. denied, ___ U.S. ___, 109 S.Ct. 1164, 103 L.Ed.2d 222 (1989). For the reasons stated in the text, we conclude that there was no discrepancy in this case that was sufficient to have required a specific unanimity instruction.

Given the indictment's clear focus on the June 16 transaction, the jury would readily perceive that the evidence introduced concerning the failed June 13 deal was merely presented for the purpose of explaining the course of events that led to the formation of the conspiracy charged in the indictment.

Lastly, we discern no other basis for concluding that there was a "genuine possibility" of juror confusion or that there was a genuine risk that the jury might convict Anguiano without agreeing upon the dates during which she conspired with the Reynoso brothers. Accordingly, the district court did not commit plain error in failing to give a specific unanimity instruction.

## CONCLUSION

Finally, we note that a $50 assessment was levied against Anguiano under 18 U.S.C. § 3013. We have recently held this statute unconstitutional since it was enacted in violation of the origination clause. *See United States v. Munoz–Flores*, 863 F.2d 654 (9th Cir.1988). Accordingly, we vacate the $50 assessment imposed under this statute. In all other respects, the judgment of the district court is affirmed.

Conviction AFFIRMED; sentence VACATED IN PART and AFFIRMED IN PART.