959 F.2d 243
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joan Anna Yuk Lin VAN SCHOIACK; Frederick Neal Stribling;
Cecil Cleve Van Schoiack; Larry Cecil Van
Schoiack; Allene Van Schoiack;
Appellants-Appellants.
 Nos. 90-3050,[1] 90-30357, 90-30377, 90-30383 and
90-30392.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 1992.
Decided April 1, 1992.
 
 1
 Before EUGENE A. WRIGHT and ALARCON, Circuit Judges, and FONG,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 From December 1985 until mid-1989, the appellants participated in a scheme to defraud homeowners of their properties by effecting a transfer of ownership to their own companies and agreeing to assume responsibility for all past due and future mortgage payments. After obtaining the properties, the appellants failed to make the necessary payments, resulting in the foreclosure of the properties. Substantial losses were suffered by the original owners and subsequent purchasers. A jury convicted the appellants of conspiracy, mail fraud, and equity skimming. They appeal.
 
 
 4
 * The appellants challenge three of the court's supplemental jury instructions. They argue that the court's response to the jury's first question was plain error because it lessened the government's burden of proof to a negligence standard by permitting the jury to convict them for conduct they should have known was illegal. See United States v. Anguiano, 873 F.2d 1314, 1319 (9th Cir.), cert. denied, 493 U.S. 969 (1989) (when appellants fail to object, we review for plain error).
 
 
 5
 Here, the court's initial instruction to the jury covered the mens rea requirement for each substantive charge. The supplemental instruction says that specific intent means knowing conduct committed "purposely" and with "intent to violate the law." We fail to see how the jury could interpret the instruction as permitting a finding of guilty based on negligence.
 
 
 6
 The appellants argue that the court's responses to jury questions two and three introduced the Pinkerton conspiracy theory, a basis for criminal liability not addressed in their closing statements.
 
 
 7
 They contend incorrectly that the Pinkerton theory was not invoked until after deliberations had begun. Instruction 16[2] explained to the jury the principles of Pinkerton liability. The court's response to the jury question did not alter or amplify Instruction 16's explanation of the theory.
 
 
 8
 The appellants also argue that the court erred in failing to caution the jury that their deliberations must not be based on hypothetical facts.
 
 
 9
 The court's initial instruction explained the proper basis for a verdict. Its response did not imply that the jury could rely on hypothetical facts to convict the appellants and informed the jury of the law by which they were to make their determinations.
 
 II
 
 10
 The appellants argue that the court erred when it did not require the government to show that they formally assumed the loans on the fraudulently acquired properties.
 
 
 11
 Each appellant was convicted of equity skimming under 12 U.S.C. § 1709-2. In 1988, Congress amended the statute to exclude explicitly any requirement that a defendant formally assume the underlying mortgage to be held responsible under the statute. The appellants argue that their actions were not criminal because prior to the amendment, the law required them to "assume the mortgage" for criminal penalties to attach.
 
 
 12
 Statutory amendments do not show that Congress intended to change the law. Callejas v. McMahon, 750 F.2d 729, 731 (9th Cir.1984). Amendments may merely clarify what was initially intended. United States v. Montgomery County, Md., 761 F.2d 998, 1003 (4th Cir.1985).
 
 
 13
 The government did not have to prove that the appellants formally assumed the mortgages.
 
 III
 
 14
 The appellants argue that mail fraud counts IV and XVII should be reversed because insufficient evidence supports the use of the mails element.
 
 
 15
 Counts IV and XVII involved the alleged mailings of a statutory warranty deed and a quit claim deed. Questions arose as to whether these items had been mailed because the warranty deed bore a later date than the postmark on the envelope, and the envelope containing the quit claim deed had uncancelled postage stamps.
 
 
 16
 Proof of mailing may be made by circumstantial or direct evidence. Bolen v. United States, 303 F.2d 870 (9th Cir.1962). If there is evidence of receipt by mail, the jury must decide if the document was mailed. Green, 745 F.2d at 1208.
 
 
 17
 The evidence here consisted of witnesses' personal knowledge and exhibits indicating the mailings took place. It was appropriate to let the jury decide whether these two items met the mailing requirement of mail fraud.
 
 IV
 
 18
 Allene, Cecil and Joan contend that there was insufficient evidence of their intent to defraud to support their convictions. They argue that they held only minor company jobs and were not aware of fraudulent activity.
 
 
 19
 As office manager, Allene met with customers and executed documents with homeowners to transfer ownership to the appellants' companies. Cecil looked for prospective properties and made inquiries at financial institutions in search of more property. He did maintenance work on the acquired properties, and he collected rents. Joan handled the companies' banking, and answered inquiries from homeowners and lenders who were asking why mortgage payments had not been made.
 
 
 20
 From this evidence, a reasonable jury could find that these appellants had an intent to defraud.
 
 V
 
 21
 Larry argues that the court erred in giving a limiting instruction over objection. He contends that the instruction emphasized his prior crime and hurt his credibility.
 
 
 22
 The court admitted evidence of his prior crime of passing a bad check under Fed.R.Evid. 609. At the end of trial, his co-defendants received a limiting instruction on this evidence. Failure to give a limiting instruction "on request" can result in reversible error. See, e.g., United States v. Rewald, 889 F.2d 836, 865 (9th Cir.1989), cert. denied, 111 S.Ct. 64 (1990). The court did not abuse its discretion in giving the limiting instruction over objection.
 
 VI
 
 23
 Larry argues that probable cause did not support the search warrant for his briefcase.
 
 
 24
 The warrant was based on allegations in FBI Agent MacDonald's affidavit. It described in detail the investigation of Larry and his family. It noted that he was engaged in a mortgage fraud scheme and included statements of witnesses describing meetings with him. At those times, he kept documents relating to the fraudulent deals in his briefcase.
 
 
 25
 These factors gave the issuing judge a substantial basis to conclude that the briefcase would contain relevant documents. Probable cause supported the search of the briefcase.
 
 VII
 
 26
 Larry contends that the restitution amount the court ordered, $354,000, exceeds the amount of loss he caused, violating the Victim-Witness Protection Act. See United States v. Hughey, 110 S.Ct. 1979, 1981 (1990). He also argues that because he was not informed of the possible amount before sentencing, he was not given notice or an opportunity to contest it.
 
 
 27
 The court ordered the restitution as a special condition of probation. It suspended the imposition of sentence on Count XVIII, and instead gave Larry five years' probation. In United States v. Duvall, 926 F.2d 875 (9th Cir.1991), this court observed that the Federal Probation Act (FPA), 18 U.S.C. § 3651, governs restitution ordered as a special condition of probation. The FPA allows a court to award restitution to "aggrieved parties for actual damages or loss caused by the offense for which conviction was had" as a condition of probation. Id.
 
 
 28
 This indictment and the trial evidence gave adequate notice of the final restitution amount. See United States v. Whitney, 785 F.2d 824, 825 (9th Cir.1986), amended by, 838 F.2d 404 (9th Cir.1988). Larry had the opportunity to contest this amount during his sentencing hearing; a separate evidentiary hearing on the amount of loss was not required. We find that the court did not err in imposing $354,000 restitution.
 
 VIII
 
 29
 Larry challenges two evidentiary rulings. He argues that he was prevented from developing his good faith defense on cross-examination because the court sustained the government's relevancy objections improperly.
 
 
 30
 Larry acquired more than 50 homes based on false representations. His offer of proof concerned only three of them. Any error preventing him from explaining three acquisitions would not affect the verdict. See United States v. Feldman, 788 F.2d 544, 556 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987). The court's ruling did not harm his defense.
 
 
 31
 He also contends that the court erred when it admitted his false business identification card into evidence. He says that this was more prejudicial than relevant under the Fed.R.Evid. 403/404(b) balancing test because there was no relationship between his false ID card and his credibility.
 
 
 32
 He placed his credibility in issue when he testified. Fed.R.Evid. 608(b)(1) gives the court discretion to permit cross-examination of a witness regarding specific instances of conduct concerning the witness's character for truthfulness or untruthfulness. The court did not abuse its discretion in admitting the ID card.
 
 
 33
 AFFIRMED.
 
 
 
 [1]
 Cause No. 90-30350 was submitted without oral argument
 
 
 *
 Honorable Harold M. Fong, United States District Judge for the District of Hawaii, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [2]
 Instruction 16 provides: Once you have decided that the appellant was a member of the conspiracy, the appellant is responsible for what other conspirators said or did to carry out the conspiracy, whether or not the appellant knew what they said or did