19 F.3d 31
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lisa Kyong Mi LEE, Defendant-Appellant.
 No. 92-10328.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 4, 1993.
Decided March 22, 1994.
 
 Before: GOODWIN, TANG, and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Lisa Lee appeals her jury convictions on two counts of possessing crystal methamphetamine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a). Lee contends she was denied her constitutional right to unanimous verdicts on federal charges. We affirm-in-part, reverse-in-part, and remand.
 
 I.
 
 3
 In March 1992, a grand jury returned a superceding indictment charging Lee with two counts under 21 U.S.C. Sec. 841(a). Both counts alleged that at certain times "in the District of Hawaii" Lee possessed crystal methamphetamine with intent to distribute. Count I charged Lee with possessing "approximately 20 pounds" of the drug "[o]n a date unknown, but during 1990." Count II alleged possession of "approximately six (6) ounces" of methamphetamine "in or about late February, 1991." The indictment offers no other details about the charged crimes.
 
 
 4
 According to the government's appellate brief, count I is based on unspecified records seized from Lee, and Lee's statement to investigators that sometime between February and March 1990 she obtained approximately twenty pounds of methamphetamine, or "ice," from someone named "Kim." [Red Brief at 4.] Count II is purportedly based on Lee's statement that she received four ounces of methamphetamine from Paul Morton, and on Morton's testimony that in late February 1991 he delivered four ounces of methamphetamine to Lee's apartment. [Red Brief at 4, 7-8.]
 
 
 5
 Before trial, Lee moved to exclude "testimony or evidence of other illegal acts other than those detailed in the indictment." In particular, Lee was concerned that "the Government should be limited to testimony that the Defendant had 20 pounds at one point in time." The government, however, had little direct evidence that Lee ever possessed at a particular moment the amount of drugs charged in count I. The government therefore sought to admit evidence tending to corroborate Lee's admission of a twenty pound quantity by calling witnesses who would testify to several drug transactions with Lee. The district court denied Lee's motion in limine, noting that the "one discre[te] act [charged in count I] happens to be during the whole year of 1990" [RT 28 (3/9/92) ].[1]
 
 
 6
 At trial, three witnesses described numerous drug transactions with Lee. Yong Hee Kawahara testified, somewhat unclearly, that she purchased drugs from Lee in late 1989 and early 1990, apparently at the rate of about 2 grams every two weeks. Kawahara also stated that she sold an unspecified amount of drugs for Lee twice a week during March and April 1990. The witness further described her knowledge of Lee's transactions with others, including Lee's receipt of three or four ounces from a third party in late 1990.
 
 
 7
 The second witness, Ricky Nakamura, testified that for six months during 1990 and early 1991 he purchased between 3/8th of an ounce and two ounces from Lee on a weekly basis.
 
 
 8
 Finally, Paul Morton recounted numerous transactions with Lee beginning in February 1991. The largest exchange, charged in count II, was a four ounce deal in late February. While the sales to which Morton and the other two witnesses testified involved a fair amount of methamphetamine, none came close to the twenty pound quantity alleged in count I.[2]
 
 
 9
 The records seized from Lee also failed to disclose a twenty pound transaction. The most relevant record entry reflects a two pound deal in April 1990. The other entries show mostly ounce-size sales occurring on unspecified dates.
 
 
 10
 The only direct evidence of a twenty pound deal is FBI Agent Serino's recollection of a conversation he had with Lee:
 
 
 11
 Q. [By the Assistant United States Attorney:] ... Did you continue to talk to the Defendant after she talked about this hostess bar?
 
 
 12
 A. [By Agent Serino:] Yes, I did.
 
 
 13
 Q. What did she tell you?
 
 
 14
 A. ... She told us that she obtained approximately 20 pounds of ice from Kim, and--
 
 
 15
 Q. Did she provide any details of the time frame this was [sic]?
 
 
 16
 A. Not specific dates, but she said it was during somewhere between February and March of 1990.
 
 
 17
 [RT III at 132.]
 
 
 18
 Later, however, the agent conceded on both cross-examination and redirect that he did not know whether Lee's admission referred to a single twenty pound quantity. In fact, another FBI agent testified that Lee said twenty pounds was the total amount she sold "during [her] active years as an ice dealer." [RT III 153.]
 
 
 19
 After the close of evidence and arguments, the district court included among its jury instructions the following statement, designated as Instruction 12:
 
 
 20
 [T]he Government is not required to prove that the amount or quantity of crystal methamphetamine as charged in the indictment. It is only--it need only prove beyond a reasonable doubt that there was a measurable amount of crystal methamphetamine.
 
 
 21
 [RT IV 36.] The jury was also instructed, perhaps as part of Instruction 12, that "the indictment may allege a certain amount, but the Government doesn't have to prove that." [Id. ] Instead, according to the instruction, "[a]ll the government has to prove [is] the elements, or it has to prove that there was a measurable amount of crystal methamphetamine involved." [Id. ] The jury also received a general unanimity instruction: "[I]n order to return a verdict, ... it's necessary that each juror agree thereto, your verdict must be unanimous." [RT IV 89.]
 
 
 22
 During its deliberations, the jury sent two notes to the district court. The first read: "In regards to count # 1 is 4 oz considered a measurable amount in regards to the 20 [pounds]--or can you give us an idea of what 'measurable' means[?]" [ER 37.] The district court responded with this supplemental written instruction:
 
 
 23
 See Instruction # 12. The government is not required to prove the precise amount charged in Count 1 of the indictment (20 pounds). It need only prove beyond a reasonable doubt that there was a measurable amount of crystal methamphetamine. Under federal law, there is no minimum quantity necessary to constitute a measurable amount.
 
 
 24
 [ER 38.]
 
 
 25
 The next day, the jury sent another message: "Are we the jury to totally & completely give absolutely no consideration whatsoever to the 'approximate 20 lbs' stated in count # 1 of the superceding Indictment when deciding on our verdict? May we please see a copy of Title 21 Sec 841(A)(1)[?]" [ER 39.]
 
 
 26
 In response, the court brought the jury into the courtroom and read a prepared statement elaborating on the previous "measurable amount" instructions:
 
 
 27
 Th[e] particular code section is quite lengthy. But the pertinent part of the code section that would apply to this case is Title 21, 841(a)(1) [which] states in pertinent part that,
 
 
 28
 "It shall be unlawful for any person knowingly or intentionally to possess with the intent to distribute crystal methamphetamine."
 
 
 29
 ....
 
 
 30
 ... [T]he government is not required to prove that the amount or quantity of crystal methamphetamine was as charged in the indictment. It need only prove beyond a reasonable doubt that there was a measurable amount of methamphetamine.
 
 
 31
 And I answered your question yesterday that--when you asked, what was a measurable amount, and I said, under the federal law, there is no minimum quantity necessary to constitute a measurable amount. You have to--if four ounces was a measurable amount, four ounces is a measurable amount.
 
 
 32
 So all you have to find in Count 1 was the intent to distribute, that she had a measurable amount of methamphetamine, and she intended to distribute it. Now, does that answer your question?
 
 
 33
 (Jurors nod in the affirmative.)
 
 
 34
 [RT V 3-4.]
 
 
 35
 Lee had previously objected to this address as follows:
 
 
 36
 [T]he jury, as I sense, has some question as to whether or not there was ever a transaction at which a gross quantity of drugs were in her possession, which the Government characterizes at 20 pounds, which is the basis of this indictment.
 
 
 37
 This is a different case, in effect, Your Honor, because usually the measurable amount situation occurs when it's--when the Government charges 20 pounds, and they bring in Court say maybe five pounds, or three pounds. Under those circumstances, the Court--the jury may not find--may not hold the 20 pounds because there's a measurable amount left.
 
 
 38
 In this case, we're talking about--the issue in this case is whether there ever was a discre[te] transaction, or a discre[te] possession, which amounted to, which the Government thought was 20 pounds, which the Government could be mistaken as to the precise amount.
 
 
 39
 ....
 
 
 40
 So I would like the jury to be told that they could consider the Government's charge of 20 pounds as to what the Government alleges did, in fact, occur, but their proof may not have to be the full 20 pounds, but a measurable amount.
 
 
 41
 [RT V 1-2.] The district court noted Lee's objection.[3]
 
 
 42
 Forty-five minutes after the district court responded to the second note, the jury returned guilty verdicts on both counts. Lee appeals.
 
 II.
 
 43
 Our analysis in this case is guided by United States v. Ferris, 719 F.2d 1405 (9th Cir.1983), and its progeny. In Ferris, the defendant made essentially the same argument now raised by Lee--mainly that "the trial court deprived him of his constitutional right to a unanimous verdict by declining a proferred [sic] instruction that the jury must be in unanimous agreement on the precise act of possession with intent to distribute." Id. at 1406. Ferris apparently based his request for a specific unanimity instruction on the government's evidence of several different possessions over a two month period. See id.
 
 
 44
 Writing for a unanimous panel, then-Judge Kennedy rejected Ferris's argument on the ground that a jury instruction "tailored to the particular charges" and requiring unanimity on a specific set of facts is not necessary in every case. Id. at 1407. Recognizing "a requirement of substantial agreement as to the principal factual elements underlying a specified offense," id.; see also McKoy v. North Carolina, 494 U.S. 433, 449 n. 5 (1990) (Blackmun, J., concurring), the Ferris court nevertheless held that "a general instruction on unanimity may suffice, without a further statement that a single set of facts on a single theory of liability must be agreed upon," 719 F.2d at 1407. Thus, instead of requiring a specific unanimity instruction in every case, the Ferris court proposed a case-by-case approach in which factors such as "the nature of the evidence, questions from the jury, some variance between the proof and the indictment, or ambiguous supplemental instructions from the court, may require the court to frame an instruction that substantial agreement is required on a specific set of facts." Id.[4]
 
 
 45
 We have repeatedly followed the analysis set out in Ferris, holding that the need for a specific unanimity instruction depends on whether there is a "genuine possibility" either that different jurors might vote to convict a defendant on the same count based on different sets of facts, or that jurors might otherwise be confused. See, e.g., United States v. Hernandez-Escarsega, 886 F.2d 1560, 1572 (9th Cir.1989), cert. denied, 497 U.S. 1003 (1990); United States v. Anguiano, 873 F.2d 1314, 1319-20 (9th Cir.), cert. denied, 493 U.S. 969 (1989); United States v. Echeverry, 719 F.2d 974, 974-75 (9th Cir.), amending 698 F.2d 375 (9th Cir.1983). Whether the possibility of confusion is genuine is measured by reference to the factors originally identified by the Ferris court. See, e.g., Anguiano, 873 F.2d at 1319-20; United States v. Frazin, 780 F.2d 1461, 1468 (9th Cir.), cert. denied, 479 U.S. 839, 844 (1986).
 
 
 46
 In Ferris, these factors did not require a special instruction because the inferences to be drawn from the evidence were simple, and "the two month period involved [did not] make [ ] the case particularly difficult or complex." 719 F.2d at 1407. Applying these factors here, however, we conclude that Lee's conviction under count I cannot stand.
 
 A. Nature of Evidence
 
 47
 To begin with, the transactions here took place over the course of at least a year and a half, instead of just two months. The evidence showed that several acts akin to those charged in the indictment occurred during this period, yet none of them directly proved a twenty pound possession. The jury's ability to distinguish among the possessions shown at trial was also made difficult by the district court's instructions that quantity above a "measurable amount" is not relevant under federal law. If quantity was irrelevant, the numerous transactions would have appeared indistinguishable from each other and from the transaction charged in count I.
 
 
 48
 The evidence of Lee's activities was also fairly complex. Whereas the defendant in Ferris simply helped count LSD tablets kept in a locker and advised his two acquaintances how to sell the drug, 719 F.2d at 1406, Lee was shown as a key figure in numerous drug transactions for which extensive records were kept. Sorting though Lee's activities undoubtedly proved more difficult than understanding the defendant's actions in Ferris.
 
 B. Variance Between Proof and Indictment
 
 49
 Because count I of the indictment is vague, it permitted such a wide range of proof that a variance would be difficult to detect. Nevertheless, even absent a difference between pleading and proof, the specificity of an indictment is relevant in assessing the need for a specific unanimity instruction. See Anguiano, 873 F.2d at 1319 (specific unanimity instruction "may be required in cases where the indictment is sufficiently broad and ambiguous so as to present a danger of jury confusion").
 
 
 50
 Here, for example, the indictment is unclear whether the twenty pound quantity represents a specific instance of possession or the total amount involved during the course of several possessions. This flaw is reflected in the district court's troubling remarks that all of Lee's drug possessions during 1990 amounted to a single act.[5]
 
 
 51
 Nevertheless, the parties generally assume that count I adequately charges Lee with one instance of possession. Consequently, the charged amount of methamphetamine is especially important--not because it is an element of the offense, but because it provides virtually the only description of the crime charged in count I. Besides stating quantity, the indictment specifies only "1990" as the period during which the alleged possession took place and "the District of Hawaii" as the place where the possession occurred.[6]
 
 
 52
 Once the district court made clear to the jury that the twenty pound allegation was virtually irrelevant, each juror was free to look about at the numerous transactions and to choose almost any one of them for purposes of count I. The jury had absolutely no reason to focus on any one transaction because, in view of the district court's instructions, count I no longer identified a particular possession. So long as a deal occurred in 1990 in Hawaii, it would be fair game. With so many sales to chose from, it would be remarkable if every juror happened to agree to a specific set of facts in convicting Lee on count I.
 
 C. Jury Notes and Supplemental Instructions
 
 53
 If the jury's notes do not indicate that different transactions were being considered simultaneously under count I, compare Echeverry, 698 F.2d at 376, they at least demonstrate the jury's confusion about the transaction to be considered.
 
 
 54
 Twice the jury asked about the significance of the twenty pound allegation. These questions were likely prompted by defense counsel's closing argument, in which he emphasized that the deal charged in count I involved twenty pounds: "She's charged in Count 1 with only one thing, and one thing only, that is on one point in time, she had in her possession a total quantity of 20 pounds." [RT IV 60.] This argument, together with the seemingly consistent text of count I and the seemingly inconsistent instructions to disregard alleged quantities, confused the jury--especially given the absence of any direct evidence showing a twenty pound quantity. While the district court's supplemental instructions answered the jury's questions, the court's responses only made it more likely that different jurors would focus on different transactions in voting to convict Lee on count I.
 
 III.
 
 55
 Considering the factors identified in Ferris, we conclude the general unanimity instruction given in this case was not sufficient to guarantee Lee her right to a unanimous verdict on count I. We therefore reverse this conviction.
 
 
 56
 As to count II, however, we affirm. Count II alleged a possession occurring sometime in "late February, 1991." The charge is therefore more specific than count I. Indeed, the span of time is less that the two month period in Ferris. The evidence at trial also showed that Lee was involved in a particular transaction occurring at the alleged time and involving approximately the same weight of drugs as charged in the indictment. Furthermore, the jury here was instructed not only on unanimity but also that "the defendant is not on trial for any act, or conduct, or offense, not alleged in the indictment." [RT IV 34.] Finally, both the jury's notes to the court and the court's responses pertained to count I, not count II. Although there was still some room for jurors to focus on different events with regard to count II,
 
 
 57
 the various acts indicating knowing possession were not inconsistent with each other; and even if one set of jurors might have focused on one part of the transaction while another set focused upon a different part, it does not follow that either set of jurors were in disagreement with the other.
 
 
 58
 Ferris, 719 F.2d at 1407. We have reviewed Lee's other arguments for reversal on count II and find them to be without merit.
 
 
 59
 We reverse the conviction on count I of the indictment and remand for further proceedings. The conviction on count II is affirmed.
 
 
 60
 AFFIRMED-IN-PART, REVERSED-IN-PART, and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The district court later repeated that the relevant date for count I is all of 1990, remarking that "the date's the year." [RT IV at 10.]
 
 
 [2]
 Agent Kelly testified to Lee's October 1991 statement that she was involved in a $100,000 methamphetamine deal with someone named "Paeho." [RT III at 144-49.] However, the date of this transaction is not indicated, and Agent Kelly stated that "Lisa never received any crystal methamphetamine for this money." [Id. at 148.] Clearly, this is not the possession of drugs received from "Kim" in early 1990 and charged in count I
 
 
 [3]
 Accordingly, we reject the government's contention that Lee waived the argument she now makes on appeal. We do not read United States v. Dorri, No. 92-50339, slip op. 1191, 1994 WL 27032 (9th Cir. Feb. 3, 1994), as requiring that counsel propose the complete language of a corrective jury instruction in order to preserve an objection to a given instruction. Unlike the defense attorney in Dorri, counsel here articulated his objection "sufficiently for the court to give a valid clarification to the jury," id. at 1197, if the court had agreed with Lee's position
 
 
 [4]
 The right to a unanimous verdict in federal criminal trials emanates from Article III, section 2, and the Sixth Amendment of the Constitution. See United States v. Echeverry, 698 F.2d 375, 377 (9th Cir.), amended, 719 F.2d 974 (9th Cir.1983). As the Ferris decision makes clear, a general unanimity instruction normally will suffice to honor this right
 
 
 [5]
 Although possession with intent to distribute has been identified as a "continuing" offense, e.g., United States v. Barnard, 490 F.2d 907, 911-12 (9th Cir.1973), cert. denied, 416 U.S. 959 (1974), a single such offense only continues so long as it involves a discrete package of drugs, cf. United States v. Horodner, 993 F.2d 191, 193 (9th Cir.1993) (proof of interruption in possession will show separate "continuing" crimes); United States v. Meredith, 824 F.2d 1418, 1426 (4th Cir.) (owing to relationship between continuing offenses and single acts, the crime of possession with intent to distribute merges with crime of distribution "[w]hen the narcotics involved in the possession and distribution ... are the same, and there is no showing of any break in the continuity from the acquisition of the narcotics to their distribution") (emphasis added), cert. denied, 484 U.S. 969 (1987), and cert. denied, 485 U.S. 991 (1988). Thus, the district court's assessment that the "one discre[te] act happens to be during the whole year of 1990" is a permissible construction of the indictment only if it refers to the continuous possession of the same package of methamphetamine
 
 
 [6]
 These sparse details could render count I of the indictment insufficient for failing to allege enough facts. See United States v. Cecil, 608 F.2d 1294, 1296-97 (9th Cir.1979)