**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 07-10367 |
| Plaintiff - Appellee, | D.C. No. CR-00-00184-HG |
| v. | |
| JORGE CASAS, aka George aka Jorge Cano, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Helen Gillmor, Senior District Judge, Presiding

Argued and Submitted June 14, 2011
Honolulu, Hawaii

Before: ALARCÓN, WARDLAW, and N.R. SMITH, Circuit Judges.


Jorge Casas appeals his conviction and sentence based on a conspiracy to

distribute and possess drugs with intent to distribute them, aiding and abetting

possession with intent to distribute, and use of a communication facility to

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

facilitate various drug offenses, in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. Sufficiency of the evidence

The evidence at Casas's trial, when viewed in the light most favorable to the prosecution, was sufficient such that a "rational trier of fact could have found the essential elements of [Counts 13, 15, and 17-20] beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

The evidence of three intercepted telephone conversations from April 13, 2000 (Count 13), plus testimony from co-conspirators explaining the meaning of code language used in the calls, was sufficient for the jury to rationally conclude that Casas had used the telephone to make "easier or less difficult" a plan to transport cocaine from Los Angeles to Maui. *See United States v. Linn*, 880 F.2d 209, 215 (9th Cir. 1989), *abrogated on other grounds by Florida v. White*, 526 U.S. 559 (1999).

Evidence of intercepted telephone conversations from April 17, April 18, April 20, April 21, and May 1, combined with testimony from co-conspirators, was sufficient for the jury to convict Casas on Counts 15 and 17-20. A juror could have rationally concluded that Casas had used the telephone to plan with co-

conspirators to evade detection by authorities and thus to make "easier or less difficult" the conspiracy to continue distributing drugs in the future. *See id.*

    2.  <u>Constructive amendment of the indictment</u>

Because Casas did not raise the issue before the district court, we review for plain error his claim that the jury instructions constructively amended his indictment. *United States v. Hartz*, 458 F.3d 1011, 1019 (9th Cir. 2006). Constructive amendment of an indictment amounts to reversible error. *United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002). However, on plain error review, we may overturn Casas's conviction only if the district court committed a plain error that affected his substantial rights. *Hartz*, 458 F.3d at 1019. Further, even if we find plain error, "we may correct it at our discretion 'if the error seriously affect[ed] the fairness, integrity or public reputation of the judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)).

The district court's omission of heroin from the jury instructions was not plain error, because doing so narrowed, rather than broadened, the scope of the conduct charged in the indictment. *See United States v. Miller*, 471 U.S. 130, 136 (1985). Likewise, the jury instructions created only a nonfatal variance as to Counts 13, 15, and 17.

3

As to Counts 3, 4, 7, 8, and 10, the jury instructions constructively amended the indictment by allowing the jury to find only an *agreement* to possess drugs with intent to distribute them, rather than requiring the jury to find *actual* possession or distribution as charged in the indictment. Assuming without deciding that this was plain error that affected Casas's substantial rights, *see Adamson*, 291 F.3d at 615, we nonetheless exercise our discretion to leave Casas's sentence intact. *See Hartz*, 458 F.3d at 1019. Casas received a sentence of 200 months for Counts 1, 11, and 14, with an additional 48-month sentence for Counts 3, 4, 7, 8, 10, 13, 15, and 17-20, to run concurrently. Even if we were to reverse Casas's sentence as to Counts 3, 4, 7, 8, and 10, the separate 200-month sentence would not be affected. We thus conclude that the error as to Counts 3, 4, 7, 8, and 10 did not "seriously affect the fairness, integrity or public reputation" of Casas's trial and sentence. *See Olano*, 507 U.S. at 736.

3.  Multiple conspiracies jury instruction

The need for a multiple conspiracies instruction generally arises when multiple co-defendants stand trial together, and there is a risk of "spillover" of guilt. *See United States v. Anguiano*, 873 F.2d 1314, 1317 (9th Cir. 1989). However, "spillover" is not a concern where, as here, a defendant stands trial alone. *Id.* at 1318. Further, although there may have been subgroups within the

4

drug distribution ring, it is not necessary that each conspirator participate in each facet of a large conspiracy like the one charged here. *See United States v. Mincoff*, 574 F.3d 1186, 1196 (9th Cir. 2009). Given that the evidence was consistent with a single conspiracy and that Casas stood trial alone, the jury instructions as a whole "fairly and adequately" covered the issues at trial. *See Anguiano*, 873 F.2d at 1317. It was not an abuse of discretion to refuse to instruct the jury concerning multiple conspiracies. *See id.*

4. Hearsay and Confrontation Clause objections

*(a) DEA-7 forms*

Although some of the remarks in the DEA-7 forms constituted hearsay, *see* Fed. R. Evid. 801, the relevant information contained in the forms was cumulative of witnesses' live testimony such that any error in admitting the DEA-7s was harmless. Assuming without deciding that the DEA-7 forms are testimonial statements, admitting the reports did not violate Casas's rights under the Confrontation Clause, because the declarants testified at trial and were subject to cross-examination. *See Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2531-32 (2009).

*(b) Forensic drug reports*

5

The district court did not violate the Confrontation Clause by admitting the three forensic drug reports—one concerning the seized methamphetamine and two concerning the seized cocaine—prepared by Tina Chang. She testified at trial to the information contained therein and was subject to cross-examination. *See id.* at 2532. For the same reason, any hearsay error was harmless.

The single methamphetamine report prepared by John Chappell, who did not testify at trial, constituted inadmissible hearsay and violated the Confrontation Clause. *See id.* However, the district court's error in admitting the Chappell report was harmless, because the information in the report was cumulative of that in Chang's methamphetamine report and testimony. *See United States v. Nielsen*, 371 F.3d 574, 581 (9th Cir. 2004) ("Confrontation Clause violations are subject to harmless error analysis . . . .").

### (c) Cocaine and methamphetamine

The seized drugs are physical evidence and constitute neither an out of court statement nor a testimonial statement. *See* Fed. R. Evid. 801; *Crawford v. Washington*, 541 U.S. 36, 51 (2004). Accordingly, the district court did not violate either the hearsay rule or the Confrontation Clause in admitting the drugs.

As to Casas's objections to the chain of custody for the seized cocaine and methamphetamine, "gaps in the chain of custody normally go to the weight of the

6

evidence rather than its admissibility." *Melendez-Diaz*, 129 S. Ct. at 2532 n.1 (internal quotation marks omitted). The government presented the testimony of numerous witnesses who had control over the drugs at various points after their confiscation. Moreover, Casas does not identify any reason to suspect the drugs were tainted, contaminated, or improperly manipulated in any way.

### *(d) Fingerprint evidence*

The district court's error in admitting hearsay testimony about the seized CD case containing Casas's fingerprint was harmless. The government introduced other evidence linking Casas to the cocaine seized from Brian Jones's luggage, including the transcripts of the April 13, 2000 telephone calls and corroborating testimony from Jones and co-conspirator Felipe Ruiz Castro.

### 5. Chief Judge Gillmor's failure to recuse sua sponte

Chief Judge Gillmor did not commit plain error by not recusing herself from presiding over Casas's trial and sentencing, when she had previously sentenced his girlfriend as a co-conspirator in a separate trial. At the sentencing hearing, the judge adopted the four-level leadership enhancement as recommended in Casas's Presentence Investigation Report (PSR). Because Casas has not refuted any of the findings in the PSR, he has not shown that the judge's failure to recuse affected his substantial rights. *See Olano*, 507 U.S. at 736.

7

6.  Criminal History calculation

The district court's imposition of a Criminal History category of II, as recommended in the PSR, did not amount to plain error that affected Casas's substantial rights.  *See id.*  Had the district court excluded Casas's two prior misdemeanor convictions from the Criminal History calculation, Casas would have qualified for a Criminal History category of I.  Because Casas received a sentence far below the Guidelines range for a Criminal History category of I, he has not shown that the district court's inclusion of his prior convictions in its Criminal History calculation affected his substantial rights.

**AFFIRMED.**