[No. B101822. Second Dist., Div. Four. Apr. 14, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
ERNEST ANTHONY ADAMES, Defendant and Appellant.

**COUNSEL**

Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Suzann Papagoda, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**VOGEL (C. S.), P. J.**—Ernest Anthony Adames appeals from the judgment entered following a jury trial that resulted in his conviction of continuous sexual abuse of a child (Pen. Code, § 288.5)[1] and the order requiring him to submit to testing for acquired immune deficiency syndrome (AIDS) (§ 1202.1). He was sentenced to prison for the upper term of 16 years.

Appellant contends that his constitutional rights to a fair trial by jury and to due process under the federal Constitution (U.S. Const., 6th & 14th Amends.) were abridged by the trial court's failure to give a unanimity instruction on the specific acts underlying the charged crime and by section 288.5 itself, which on its face authorizes the jury to convict him based on findings that he had committed three "acts" without requiring the jury to agree on the same three acts.

He contends the trial court erred in excluding evidence of past molestation of the victim's mother for the purpose of impeaching her testimony. He further contends the court erred in giving both CALJIC Nos. 2.27 and 10.60, which he asserts improperly enhanced the victim's testimony by allowing the jury to consider it without corroboration while inferring corroboration of the testimony of other witnesses was required.

He challenges the validity of his sentence on the ground that the transmission of a sexual disease is not a permissible factor in the selection of the upper term. He also contends the order for AIDS testing must be stricken because that requirement did not encompass a violation of section 288 at the time his offense was committed.

We find his contentions to be unavailing and affirm the judgment and order. We hold that appellant's trial for the continuous child sex abuse statute (§ 288.5) was not unconstitutional as violative of the Sixth and Fourteenth Amendments of the federal Constitution. We also hold that the transmission of genital herpes, which involves great bodily harm, is a proper aggravating factor justifying the imposition of the upper term. We further hold that the AIDS testing mandate of section 1202.1 applies to a conviction under section 288.5 based on "three or more acts of lewd or lascivious conduct under Section 288." Additionally, we hold that the AIDS testing mandate is not punishment and such testing is not barred under either the proscription against ex post facto laws (U.S. Const., art. I, § 9, cl. 3) or Penal Code section 3, which provides that no part of the code is retroactive unless expressly so declared.

---

[1] All further section references are to the Penal Code unless otherwise indicated.

## FACTUAL SUMMARY[2]

Viewed in accordance with the usual rules on appeal (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]), the evidence established that on June 28, 1993, Sylvia, appellant's wife, took her 11-year-old daughter from her first marriage, Carmen, to the Kaiser Permanente Group in Lancaster after Carmen complained of a rash in her groin area. Carmen tested positive for herpes virus type 2, which usually occurs in the genital area and is often transmitted by sexual contact. Once a person is exposed to type 2, he or she will have it for the rest of his or her life.

On September 19, 1994, Carmen, crying and yelling, told her mother that appellant tried to rape her. Appellant was upset because Sylvia would not believe that Carmen was lying because he found clothing which Carmen was forbidden to take to school hidden under her school bag.

Sylvia left with the children to stay with relatives. Carmen told her mother that she had oral sexual contact and intercourse with appellant before the rash appeared. She further admitted that after she was returned home in February 1994, from where she had been placed in protective custody in October 1993, the abuse continued in the morning while the other children slept. After appellant lost his job in April 1994, the sexual abuse, including sexual intercourse, resumed two or three times a week until she left with her mother in September 1994. During most of that time, appellant touched her vagina with his hand or finger and on four or five occasions, he put his mouth on her vagina.

In a telephone conversation, appellant told Sylvia something like "it's not rape, it just wasn't me, it was her, too." Crying, he added, "I wanted to tell you the truth but I was afraid to." In September or October 1994, at the house of Darla Bilson, a former neighbor, appellant began crying and confessed to Bilson that he had been having an affair with Carmen for about a year and a half and that they had had sexual intercourse every day.

On November 18, 1994, through a colposcope, the standard instrument used in these incidents, Ann Pomphrey, a registered nurse with the county U.S.C. Medical Center, Vulnerable Child Center, observed a tear which had healed into a scar on Carmen's hymen and which was consistent with a claim of rape. These matters were not visible to the naked eye.

On behalf of the defense, Dr. Stanley Bierman, a dermatologist possessing expertise with the herpes virus, testified that using high magnification

---

[2]A short summary suffices since appellant does not challenge the sufficiency of the evidence to support his conviction.

lenses, he had observed an intact hymenal ring, which would have been torn if she had engaged in sexual intercourse. However, he admitted that colposcopes are more precise than the human eye in child abuse examinations, that he was not trained to use them, and that he did not use those instruments. Dr. Bierman also admitted that over 99 percent of the time the herpes virus is transmitted to the child by sexual contact.

Appellant denied ever confessing to Sylvia that he had molested Carmen. He also denied that he had confessed to Bilson in any manner. He further denied molesting Carmen.

Appellant's 1993 test results revealed that he had herpes type 2 with a score of 1.62. His 1995 test results showed that he was in the high-positive range with a score of 0.61.

## DISCUSSION

### 1. *Continuous Child Sex Abuse Statute (§ 288.5) Not Unconstitutional*

■■■ Appellant contends that his constitutional rights to a fair trial by jury and to due process under the federal Constitution (U.S. Const., 6th & 14th Amends.) were abridged by the trial court's failure to give a unanimity instruction on the specific acts underlying the charged crime and by section 288.5 itself, which on its face authorizes the jury to convict him based on findings that he had committed three "acts" without requiring the jury to agree on the same three acts. We find no constitutional infirmity.

Section 288.5 was expressly enacted to enable significant penalties against a resident child molester easier to impose. (*People* v. *Johnson* (1995) 40 Cal.App.4th 24, 26 [46 Cal.Rptr.2d 838].) In pertinent part, section 288.5, subdivision (a) provides: "Any person who . . . resides in the same home with the minor child [and] who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct . . . as defined in subdivision (b) of Section 1203.066, or three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 . . . is guilty of the offense of continuous sexual abuse[.]" Subdivision (b) of section 288.5 provides: "To convict under this section the trier of fact, if a jury, need unanimously agree only that the requisite number of acts occurred *not* on which acts constitute the requisite number."

As appellant concedes, various cases have upheld the validity of section 288.5 under the state Constitution in the face of a challenge based on the

lack of a jury unanimity requirement as to the specific acts. (See, e.g., *People* v. *Whitham* (1995) 38 Cal.App.4th 1282, 1295, 1297 [45 Cal.Rptr.2d 571].) He urges, however, that under the federal Constitution such unanimity requirement is mandated. We disagree.

■ "The need for jury unanimity in criminal prosecutions is of state constitutional origin. (Cal. Const., art. I, § 16; *People* v. *Mickle* (1991) 54 Cal.3d 140, 178 . . . ; *People* v. *Jones* (1990) 51 Cal.3d 294, 321 . . . .)" (*People* v. *Whitham, supra*, 38 Cal.App.4th at p. 1295.) An established exception to the unanimity requirement is the situation where " ' "the statute contemplates a continuous course of conduct of a series of acts over a period of time." ' " (*Ibid.*)

This is precisely the essence of section 288.5, which creates "the offense of continuous sexual abuse" based on "three or more acts of substantial sexual conduct . . . , as defined in subdivision (b) of Section 1203.066, *or* three or more acts of lewd or lascivious conduct under Section 288, with a child under the age of 14 . . . ." (§ 288.5, subd. (a), italics added; see, e.g., *People* v. *Gear* (1993) 19 Cal.App.4th 86, 92 [23 Cal.Rptr.2d 261]; *People* v. *Avina* (1993) 14 Cal.App.4th 1303, 1310 [18 Cal.Rptr.2d 511].) "Section 288.5 therefore 'falls within the exception to the rule that jurors must agree on the particular criminal acts committed by the defendant before convicting him.' . . ." (*People* v. *Whitham, supra*, 38 Cal.App.4th at p. 1296, citation omitted.)

■ We hold that the absence of a requirement that the jury unanimously agree on the particular incidents underlying a violation of section 288.5 does not violate the federal Constitution, specifically, the Sixth Amendment guarantee of the right to a jury trial or the Fourteenth Amendment guarantee of due process. In this regard, the United States Supreme Court itself "has never held jury unanimity to be a requisite of due process of law. Indeed, the Court has more than once expressly said that '[i]n criminal cases due process of law is not denied by a state law . . . which dispenses with the necessity of . . . unanimity in the verdict.' . . ." (*Johnson* v. *Lousiana* (1972) 406 U.S. 356, 359 [92 S.Ct. 1620, 1623, 32 L.Ed.2d 152], citations omitted.)

A contrary conclusion is not compelled by *United States* v. *Gipson* (5th Cir. 1977) 553 F.2d 453, *United States* v. *Mastelotto* (9th Cir. 1983) 717 F.2d 1238, *United States* v. *Anguiano* (9th Cir. 1989) 873 F.2d 1314, and *United States* v. *Payseno* (9th Cir. 1986) 782 F.2d 832. Appellant's reliance on those cases, which are factually inapposite, is misplaced. *Gipson* and *Mastelotto* involved different and distinct acts rather than a continuous course of

conduct. (*United States* v. *Gipson, supra*, 553 F.2d at pp. 458-459 [acts constituting receiving and selling stolen property]; *United States* v. *Mastelotto, supra*, 717 F.2d at p. 1247 [two separate schemes of mail or wire fraud].) Similarly, *Payseno* involved a single count of extortion but evidence of three separate acts of extortion directed at separate victims, while *Anguiano* involved a single charge which could have been based on two conspiracies involving two different sets of conspirators. (*United States* v. *Payseno, supra*, 782 F.2d at pp. 835-837; *United States* v. *Anguiano, supra*, at pp. 1316, 1317.)

In view of the foregoing, we reject, as untenable, appellant's companion contention that the trial court was required to give a unanimity instruction with regard to the specific acts involved. "The continuous-course-of-conduct crime does not require jury unanimity on a specific act, because it is not the specific act that is criminalized." (*People* v. *Jones* (1990) 51 Cal.3d 294, 329 [270 Cal.Rptr. 611, 792 P.2d 643].) In such a situation, no jury unanimity instruction is required. (*People* v. *Avina, supra*, 14 Cal.App.4th at p. 1309.) Instead, the jury was properly instructed pursuant to CALJIC Nos. 10.42.6 (1995 rev.) and 4.71.5 (1990 rev.) on the unanimity requirement of section 288.5 as to "the requisite number of acts" which occurred.

### 2. *Exclusion of Past Molestation Evidence Proper*

█ Appellant contends the trial court erred in excluding evidence of past molestation of the victim's mother for the purpose of impeachment. We find neither error nor abuse of discretion.

At trial, appellant sought to elicit evidence from Sylvia that she had been molested as a child for the purpose of showing that such prior molestation affected Sylvia's belief or disbelief in Carmen's accusations. In sustaining the prosecution's lack of relevance objection, the court stated that evidence of Sylvia's possible bias was of marginal relevance while such evidence, on the other hand, would tend to confuse the jury.

█ The trial court must afford the defense " 'wide latitude' " to test the credibility of a prosecution witness during cross-examination in a criminal case. (*People* v. *Belmontes* (1988) 45 Cal.3d 744, 780 [248 Cal.Rptr. 126, 755 P.2d 310].) Nonetheless, the court has broad discretion to determine the scope of such cross-examination. (*Ibid.*) In order to establish the court's exercise of discretion violated his or her right of confrontation under the Sixth Amendment of the federal Constitution, the defendant must establish that "he [or she] was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part

of the witness and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.' *Davis* v. *Alaska* [(1974) 415 U.S. 308] at 318 [39 L.Ed.2d 347, 354-355, 94 S.Ct. 1105]." (*Delaware* v. *Van Arsdall* (1986) 475 U.S. 673, 680 [106 S.Ct. 1431, 1437, 89 L.Ed.2d 674].) However, "[t]here is no Sixth Amendment violation at all unless the prohibited cross-examination might reasonably have produced 'a significantly different impression of . . . credibility . . . .' (*Id.* [475 U.S. at p. 680 (89 L.Ed.2d at p. 684)].)" (*People* v. *Rodriguez* (1986) 42 Cal.3d 730, 751, fn. 2 [230 Cal.Rptr. 667, 726 P.2d 113]; accord, *People* v. *Belmontes, supra,* 45 Cal.3d at p. 780.)

We do not find any Sixth Amendment violation of appellant's right to confrontation. We conclude the trial court was well within its discretion in ruling that the potential prejudice flowing from the proffered line of cross-examination outweighed the only marginal relevance of the collateral inquiry into the history of the alleged molestation of Sylvia as a child, which would have created confusion regarding the real issue, i.e., did appellant molest Carmen. (*Delaware* v. *Van Arsdall, supra,* 475 U.S. at pp. 679-680 [106 S.Ct. at pp. 1435-1436]; *People* v. *Cooper* (1991) 53 Cal.3d 771, 816-817 [281 Cal.Rptr. 90, 809 P.2d 865]; Evid. Code, § 352.)

Whether Sylvia, the victim's mother, had been molested as a child may arguably have some bearing on her credibility, i.e., she truly believed the victim's accusations against appellant or had a motive to fabricate her testimony in favor of the prosecution. Evidence that she had been molested as a child, however, would not have produced a significantly different impression of her testimony in view of Sylvia's testimony that initially she did not believe the molestation had occurred. Also, such evidence would have had minimal impact on the crucial issue of whether appellant in fact committed the acts in question since Sylvia was not a percipient witness, and her testimony was not critical to appellant's conviction. Los Angeles County Sheriff's Detective Michael Wilson testified that in September 1994, Carmen had told him about appellant's various acts of sexual abuse. Also, Bilson testified that appellant confessed to her that he had molested Carmen sexually for about a year and a half. Whether Sylvia had been abused as a child would have no effect on the strong evidence against appellant, and disallowing the pursuit of that issue was not prejudicial.

3. *Giving of CALJIC Nos. 2.27 and 10.60 Proper*

Appellant contends the court erred in giving both CALJIC Nos. 2.27 and 10.60, which he urges improperly highlighted the victim's testimony by allowing the jury to consider the victim's testimony without corroboration

while requiring corroboration of the testimony of other witnesses. We find the giving of both instructions was proper.

The trial court instructed the jury pursuant to CALJIC No. 2.27 (1991 rev.) (testimony of single witness sufficient) with all references to corroboration omitted, and CALJIC No. 10.60 (1989 rev.) (no corroboration of sexual assault victim's testimony required) as follows: "You should give the testimony of a single witness whatever weight you think it deserves. However, testimony by one witness which you believe concerning any fact is sufficient for proof of that fact. You should carefully review all the evidence upon which the proof of such facts depends[,]" and "[i]t is not essential to a conviction of a charge of continuous sexual abuse of a child that the testimony of the witness with whom such sexual relations be committed be corroborated by other evidence."

Contrary to appellant's contention, the above instructions, when viewed in context, do not elevate the credibility of the victim witness or that of other witnesses. It is settled that the giving of both instructions is appropriate. (*People* v. *Gammage* (1992) 2 Cal.4th 693, 701-702 [7 Cal.Rptr.2d 541, 828 P.2d 682].) We decline his invitation to decide otherwise. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

### 4. *Transmission of Genital Herpes Proper Aggravating Factor*

■ Appellant contends the transmission of a sexual disease is not a permissible factor in the selection of the upper term. We disagree.

In selecting the upper term, the trial court found that appellant had transmitted genital herpes to the child victim during his sexual abuse of her. The court observed that genital herpes is transmitted 99 percent of the time through sexual conduct. The court concluded that genital herpes involved "great bodily harm." The court further found that there were no factors "in mitigation that outweigh this disease that will tragically follow the victim the rest of her life[.]"

We hold that the transmission of genital herpes is a proper aggravating factor justifying the imposition of the upper term since such disease involves "great bodily harm." (*People* v. *Johnson* (1986) 181 Cal.App.3d 1137, 1140-1141 [225 Cal.Rptr. 251]; *People* v. *Castellano* (1983) 140 Cal.App.3d 608, 615 [189 Cal.Rptr. 692]; Cal. Rules of Court, rule 421(a)(1); see also *People* v. *Superior Court (Duval)* (1988) 198 Cal.App.3d 1121, 1131-1132 [244 Cal.Rptr. 522]; see generally, *People* v. *Escobar* (1992) 3 Cal.4th 740, 749-750 [12 Cal.Rptr.2d 586, 837 P.2d 1100].)

### 5. *AIDS Testing Mandate Applicable to Conviction Under Section 288.5 Based on "Three or More Acts of Lewd or Lascivious Conduct Under Section 288"*

 Appellant contends the order requiring him to submit to AIDS testing must be stricken because that requirement did not exist at the time his offense was committed. Specifically, he urges that imposition of such a requirement violates the proscription against ex post facto laws (U.S. Const., art. I, § 9, cl. 3) and the express provision of the Penal Code which mandates "[n]o part of it is retroactive, unless expressly so declared." (§ 3.) We disagree and hold that section 1202.1 is not violative of the proscription against ex post facto laws and that the AIDS testing mandate of section 1202.1 applies to appellant.

Section 1202.1, subdivision (a) provides in pertinent part that "the court shall order every person who is convicted of . . . a sexual offense listed in subdivision (e), whether or not a sentence or fine is imposed or probation is granted, to submit to a blood test for evidence of antibodies to the probable causative agent of acquired immune deficiency syndrome (AIDS)." Pursuant to the 1995 amendment, subsection (6) was added to subdivision (e) and listed a violation of section 288 as a "sexual offense" under that subdivision. (Stats. 1995, ch. 396 (Assem. Bill No. 681), § 1.)

Section 1202.1, subdivision (e)(6) provides in relevant part: "Lewd or lascivious acts with a child in violation of Section 288, if the court finds that there is probable cause to believe that blood, semen, or any other bodily fluid capable of transmitting HIV has been transferred from the defendant to the victim."

 Before addressing appellant's contentions, we must first determine whether section 1202.1 encompasses the offense for which appellant was convicted. Appellant was not charged with nor convicted of a violation of section 288 (lewd or lascivious acts with child under age 14). Instead, he was convicted of a violation of section 288.5 (continuous sexual abuse of a child under age 14).

 "Section 288.5 was enacted in 1989 in order to remedy some of the problems of pleading, proof and jury instruction that had arisen in the prosecution of 'resident child molesters' under section 288." (*People* v. *Avina, supra,* 14 Cal.App.4th at p. 1308.) A violation of section 288.5 may be comprised of either "three or more acts of substantial sexual conduct . . . , as defined in subdivision (b) of Section 1203.066, *or* three or more acts of lewd or lascivious conduct under Section 288." (§ 288.5, subd. (a), italics added.)

Subdivision (b) of section 1203.066 defines " '[s]ubstantial sexual conduct' [as] penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or masturbation of either the victim or the offender." In contrast, "section 288 is violated by 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*People* v. *Martinez* (1995) 11 Cal.4th 434, 439, 452 [45 Cal.Rptr.2d 905, 903 P.2d 1037].) The conduct proscribed by both sections, however, overlap to the extent section 288 also applies where the victim is raped, sodomized, orally copulated, or where the defendant engages in unlawful sexual intercourse with a person under the age of 18. (See, e.g., *People* v. *Scott* (1994) 9 Cal.4th 331, 343 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; §§ 261, 261.5, 264.1, 266c, 286, 288a, 289.)

"Section 288 requires the specific intent of 'arousing, appealing to, or gratifying the lust or passions or sexual desires of [the defendant] or of the child . . . .' A conviction for section 288.5, in contrast, could be based upon a course of substantial sexual conduct within the meaning of section 1203.066, subdivision (b), which requires no specific intent. [In other words,] such acts could be engaged in for nonsexual purposes, for example for the infliction of pain, or to appeal to the sexual interest of a third person." (*People* v. *Avina, supra*, 14 Cal.App.4th at p. 1313.)

"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. . . . In order to determine this intent, we begin by examining the language of the statute. . . . But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' . . . Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' . . . Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420], citations omitted.) "To the extent that uncertainty remains in interpreting statutory language, 'consideration should be given to the consequences that will flow from a particular interpretation[.]'" (*People* v. *Cruz* (1996) 13 Cal.4th 764, 782 [55 Cal.Rptr.2d 117, 919 P.2d 731].) Accordingly, "[w]e will not parse each literal phrase of a statute if doing so contravenes the obvious underlying intent, or leads to absurd or anomalous results." (*People* v. *Martinez, supra*, 11 Cal.4th 434, 448.) Mindful of these principles, we examine section 1202.1 to ascertain the Legislature's intent and its import.

Section 1202.1 is subject to two interpretations. In pertinent part, it provides that "every person who is convicted of . . . a sexual offense listed in subdivision (e)" must submit to AIDS testing (§ 1202.1, subd. (a)) and that those offenses include "[l]ewd or lascivious acts with a child in violation of Section 288" (§ 1202.1, subd. (e)(6)). One interpretation is that the defendant must be convicted of a violation of section 288 as a condition for AIDS testing. Alternatively, the defendant's conviction may encompass a crime that includes a violation of section 288.

The Legislature's intent clearly is to require AIDS testing of anyone who has committed "[l]ewd or lascivious acts with a child in violation of Section 288[.]" The interpretation that restricts AIDS testing only to convictions under section 288 leads to a patently absurd result. Logically, the Legislature did not intend to require AIDS testing where a defendant violated section 288 under some circumstances, e.g., where he was charged with a violation of and convicted under section 288, but not under other circumstances, e.g., where he was convicted of section 288.5 based on multiple violations of section 288. We therefore adopt the other interpretation requiring the AIDS testing mandate of section 1202.1 to apply to a conviction which necessarily encompasses a violation of section 288. (See *People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071-1072 [22 Cal.Rptr. 278, 856 P.2d 1134] [plain meaning of statute as requiring restitution to be restricted to a "victim" who suffered a physical injury contravenes Legislature's intent that restitution be paid to all victims].)

Based on the foregoing, we hold that the sexual offense listed in subdivision (e)(6) of section 1202.1 as "[l]ewd or lascivious acts with a child in violation of Section 288" encompasses a violation of section 288.5 which was based on "three or more acts of lewd or lascivious conduct under Section 288" as contrasted with simply "three or more acts of substantial sexual conduct . . . , as defined in subdivision (b) of Section 1203.066."

The amended information expressly alleged appellant had violated section 288.5 by engaging in "three and more acts of 'substantial sexual conduct', as defined in . . . section 1203.066(b), *and* three and more acts in violation of Section 288." (Italics added.) The jury found appellant guilty of violating section 288.5 "as charged in the Information." The record contains ample evidence supporting the jury's implied finding that appellant committed the continuous child sexual abuse with the requisite specific intent under section 288 and that the underlying offenses constituted both "[l]ewd or lascivious acts" under section 288 and substantial sexual conduct as defined in subdivision (b) of section 1203.066.

We therefore conclude that the AIDS testing mandate of section 1202.1 applies to the offense for which appellant was convicted.

■ We initially dispose of appellant's constitutional challenge. A statute which " 'makes more burdensome the punishment for a crime, after its commission' " is proscribed as an ex post facto law. (*Collins* v. *Youngblood* (1990) 497 U.S. 37, 42 [110 S.Ct. 2715, 2719, 111 L.Ed.2d 30]; *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 293-294 [279 Cal.Rptr. 592, 807 P.2d 434].) That is not the case with section 1202.1. Our Supreme Court explained that a court-ordered AIDS test does not constitute punishment and held that a defendant whose offense occurred prior to the enactment of section 1202.1 could be subjected to AIDS testing under that statute. (*People* v. *McVickers* (1992) 4 Cal.4th 81, 85, 87, 88 [13 Cal.Rptr.2d 850, 840 P.2d 955].) We therefore hold that an order requiring the AIDS testing of a defendant whose violation of section 288.5 was based on "three or more lewd or lascivious acts under section 288" and was committed prior to the 1995 amendment of section 1202.1 does not violate the proscription against ex post facto laws. (U.S. Const., art. I, § 9, cl. 3.)

We further hold section 3 does not bar application of the AIDS testing mandate to appellant although section 288 was not listed as an offense for which such testing was required when he committed the offense (§ 288.5) for which he was convicted. Section 3 provides that "[n]o part of [the Penal Code] is retroactive, unless expressly so declared." The thrust of appellant's position is that subjecting him to AIDS testing under section 1202.1 constitutes a retroactive application of that section.

The fallacy of his position lies with his untenable premise that the subject AIDS testing order is a retroactive application of subdivision (e)(6) of section 1202.1. ■ Amendments to the Penal Code, "which change the legal consequences of criminal behavior to the detriment of defendants, cannot be applied to crimes committed before the measure's effective date." (*Tapia* v. *Superior Court, supra,* 53 Cal.3d at p. 297.) "Application of [such amended] provisions to crimes committed before the measure's effective date would be 'retrospective' [in violation of section 3] because each would change the legal consequences of the defendant's past conduct. . . . Such application would also likely violate the rule against ex post facto legislation, since each of these provisions appears to define conduct as a crime, to increase punishment for a crime, or to eliminate a defense." (*Id.* at p. 298.)

■ As discussed, *ante,* subjecting a defendant to AIDS testing is not punishment. It is therefore clear that no increase in punishment occurs by requiring appellant to submit to AIDS testing although, when committed, his offense was not one which triggered the AIDS testing requirement. Accordingly, the subject AIDS testing order is not invalid as a retroactive application of section 1202.1.

## DISPOSITION

The judgment and order are affirmed.

Hastings, J., and Aranda, J.,* concurred.

A petition for a rehearing was denied April 29, 1997, and appellant's petition for review by the Supreme Court was denied June 25, 1997.

---

*Judge of Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.