Filed 5/6/16  P. v. Angel CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID ALVAREZ ANGEL,<br><br>    Defendant and Appellant. | B255349<br><br>(Los Angeles County<br>Super. Ct. No. GA083171) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Stanley Blumenfeld, Judge.  Affirmed.

Daniel G. Koryn, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Margaret E. Maxwell and Tannaz Kouhpainezhad, Deputy Attorneys General, for Plaintiff and Respondent.

_____

David Alvarez Angel was convicted of engaging in three or more acts of substantial sexual conduct or lewd and lascivious conduct with a child under the age of 14, for at least three months, while residing with or having recurring access to the child. (Pen. Code, § 288.5, subd. (a).)[1] Defendant argues that the trial court erroneously failed to (1) give a unanimity instruction, sua sponte, and (2) grant a new trial, based on jury misconduct. We find no error and affirm.

## FACTS

Sandra O. described sexual conduct by defendant that began when she was five or six years old and continued until 1998, when she was 10. During that time, defendant was in a relationship with Sandra's mother, G., and he spent nearly every night at her home. He babysat Sandra when G. left before 5:00 a.m. for work.

When Sandra was five or six years old, and G. was at her job, defendant asked Sandra to sit on his lap while they watched television. She complied, facing away from him. Defendant turned her to face him, astraddle, and began kissing her neck and chest. Their genitals were touching through their clothing and he placed his hands on her thighs. Sandra was confused by this conduct which, to her youthful sensibilities, went on for a long time.

After the first incident, defendant no longer kissed her, "but there was more touching" in the vicinity of her private parts, which occurred "a lot." When Sandra was seven or eight, and her mother was away, defendant came to Sandra's bedroom as she slept, and instructed her to lie down in the master bedroom. As Sandra dozed, defendant began rubbing her leg and upper body, and told her to get on top of him. She tried to sit on his belly button and avoid his private parts, but defendant repositioned her to straddle his genitals. Sandra understood "that something wrong was going on," but she complied because she was scared and he is an adult, so she had to obey.

---

[1]    Unlabeled statutory references in this opinion are to the Penal Code.

With his genitals touching Sandra's through their clothing, defendant grasped the child's thighs and began to move her back and forth over his penis. He did not say anything, but breathed heavily. She was scared. After "a long time," as Sandra recalled, defendant told her to get off and return to her room.

Sandra described an incident that occurred when she was about nine years old. Defendant again asked her to lay down in her mother's bedroom. Sandra did not immediately obey, but looked at him, frightened. Defendant removed her "bottoms." She tried to hold onto her underpants, but he took them off. Laying on the bed, with her back to defendant, Sandra felt his naked, somewhat erect penis moving up and down "on my butt." He told Sandra "to let him put it inside." She did not know what he meant, but said no because "I just know it wouldn't be good." Despite her refusal, she felt him "trying to force" his penis into her buttocks, so "I just squeezed my butt cheeks" to prevent him from penetrating her. Because he was not getting anywhere, defendant lay on his back and told Sandra to get on top of him. As she straddled him, he began moving her back and forth by holding onto her thighs, so that his penis rubbed against her vagina. Although he did not penetrate her, the force of the movement was painful. This went on for a long time, until defendant ejaculated onto his stomach.

This was the only occasion when defendant engaged in skin-to-skin frottage; however, there were three or four instances of it while they were clothed, when Sandra was six to eight years old. In addition, defendant had Sandra touch his naked penis, guiding her with his hand to rub him while he massaged her clitoris. After defendant ejaculated, he directed her to get tissues to clean off the semen. Sandra was about nine years old at the time.

Throughout the time that she knew him, defendant touched Sandra seven to nine times per month. The touching was of "all kinds," though her trial testimony described the "major incidents." She did not disclose the abuse because she was scared of defendant. He told her to never tell anyone, and that her mother would not believe her because G. loved him more than she loved Sandra. Sandra believed him.

3

Sandra disclosed defendant's sexual misconduct to her mother in 2010, when a school teacher was accused of molesting students, including Sandra. G. notified the police, who arranged for Sandra to confront defendant about his behavior in recorded telephone calls. Defendant initially said, "nothing happened" and "you just shouldn't get stuck in the past." By the same token, defendant also said, "it was just something that, . . . I mean, your curiosity was awakened." He offered to help Sandra, was unable to explain his conduct, and told her to not feel bad about it. Eventually, defendant said, "You can't imagine how bad I felt when you told me about [this] and, well, yes, the truth of the matter is I feel sorry. It feels really bad." He added, "I'd like to say I'm sorry, and . . . for you to forgive me."

## PROCEDURAL HISTORY

Defendant was charged with continuous sexual abuse of Sandra O. from 1993 to 1998, while he was residing with and had access to her. (§ 288.5.) A jury found him guilty. After allowing defendant time to investigate possible juror misconduct, the court denied defendant's motions for a new trial. (§ 1181.) He was sentenced to the low term of six years in prison. He appeals.

## DISCUSSION

**1. No Unanimity Instruction Was Required**

To convict a defendant of continuous sexual abuse of a child, the jury "need unanimously agree only that the requisite number of acts occurred not on which acts constitute the requisite number." (§ 288.5, subd. (b).)[2] Defendant argues that the statute "is incompatible with both California and federal constitutional guarantees of due process and the right to trial by jury." Due to this perceived infirmity, defendant reasons that the

---

[2] The corresponding jury instruction, which was given, is CALCRIM No. 1120: "You cannot convict the defendant unless all of you agree that he committed three or more acts over a period of at least three months, but you do not all need to agree on which three acts were committed."

4

trial court was required to provide a standard unanimity instruction, though trial counsel did not request one.

With respect to defendant's federal claim, the Supreme Court "has never held jury unanimity to be a requisite of due process of law. Indeed, the Court has more than once expressly said that '[i]n criminal cases due process of law is not denied by a state law . . . which dispenses with the necessity of . . . unanimity in the verdict.'" (*Johnson v. Louisiana* (1972) 406 U.S. 356, 359; *People v. Adames* (1997) 54 Cal.App.4th 198, 207; *People v. Vargas* (2001) 91 Cal.App.4th 506, 562.) Thus, section 288.5 does not violate due process guarantees in the federal Constitution. Instead, the unanimity requirement is found in the state Constitution. (Cal. Const., art. I, § 16; *People v. Jones* (1990) 51 Cal.3d 294, 321.) Even so, no appellate court in this state has ever agreed with the constitutional challenge that defendant raises here.

Section 288.5 is designed to address the situation presented by a resident molester who has unchecked access to a child and repeatedly molests her over a prolonged period—in this case, over the course of some five years. (See *People v. Rodriguez* (2002) 28 Cal.4th 543, 549-550 [explaining the legislative purpose of § 288.5].) "'The crime of continuous sexual abuse of a child (§ 288.5) is a continuous-course-of-conduct crime and therefore falls within the exception to the rule that jurors must agree on the particular criminal acts committed by the defendant before convicting him.' [Citation.] The continuous-course-of-conduct exception to the unanimity requirement applies when, as here, the statute contemplates a continuous series of acts over a period of time. [Citation.] There is no violation of the constitutional right to unanimous agreement on the criminal conduct because the actus reus of the offense is the course of conduct, not a specific act." (*People v. Cissna* (2010) 182 Cal.App.4th 1105, 1124; *People v. Gear* (1993) 19 Cal.App.4th 86, 91-93; *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1295-1298; *People v. Adames*, *supra*, 54 Cal.App.4th at p. 208; *People v. Avina* (1993) 14 Cal.App.4th 1303, 1308-1313; *People v. Cortes* (1999) 71 Cal.App.4th 62, 74-75.)

Defendant maintains that three acts of molestation are an essential element of section 288.5, so each act must be proved beyond a reasonable doubt. Not so. While "the number of acts of molestation is an essential element of the crime[,] unanimity on which acts . . . is not." (*People v. Higgins* (1992) 9 Cal.App.4th 294, 307.)

The state Supreme Court has rejected the notion that unanimity is "unattainable where testimony regarding repeated identical offenses is presented in child molestation cases. In such cases, although the jury may not be able to readily distinguish between the various acts, it is certainly capable of unanimously agreeing that they took place in the number and manner described." (*People v. Jones*, *supra*, 51 Cal.3d at p. 321.) The court noted that the "'true issue'" is the credibility of the child: the jury will believe the child's testimony describing consistent repetitive acts, or it will disbelieve it. "'In either event, a defendant will have his unanimous jury verdict [citation] and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes the defendant committed all the acts it necessarily believes he committed each specific act. [Citations]'" (*Id.* at p. 322.)

By being charged with a single count of continuous sexual abuse under section 288.5, defendant avoided being charged with innumerable violations of section 288— potentially seven to nine criminal violations per month—that could result in a long prison sentence. In *People v. Jones*, for example, a resident child molester charged with 28 counts of lewd and lascivious acts on children under the age of 14 could be convicted with "generic testimony," each incident a separate offense and criminal sanction. (51 Cal.3d at pp. 300, 314-315.) "Defendant, having been charged and convicted of only one count of the continuous sexual abuse of a child rather than the multiple counts available [under section 288], is a beneficiary of section 288.5 and an odd champion for its demise." (*People v. Higgins*, *supra*, 9 Cal.App.4th at p. 308.)

6

In any event, failure to give a unanimity instruction was harmless where, as here, the defense is that the victim lied as to all of the sexual incidents she described.[3] The jury rejected the defense. In this scenario, where there is no basis to discriminate among many incidents of sexual abuse, and the jury believed the victim, the lack of a unanimity instruction is harmless. (*People v. Brown* (1996) 42 Cal.App.4th 1493, 1502.)

## 2. **Juror Misconduct**

Defendant exercised his Fifth Amendment right to not testify at trial. The jury was instructed that defendant has a constitutional right not to testify. Jurors were not to consider "for any reason at all" his failure to testify, nor discuss it during deliberations, nor let it influence their decision. Violating this instruction is misconduct that gives rise to a presumption of prejudice, "which may be rebutted by an affirmative evidentiary showing that prejudice does not exist or by a reviewing court's examination of the entire record to determine whether there is a reasonable probability of actual harm resulting from the misconduct." (*People v. Lavender* (2014) 60 Cal.4th 679, 687.)

Defense counsel spoke to the jury foreperson outside the courtroom after trial. According to defense counsel, the foreperson "said that the reason why the jury convicted [defendant] so quickly was because he did not testify. She said that during deliberations some members of the jury said that they could not understand why an innocent person would not take the stand and testify, unless he was guilty." The prosecutor countered that the foreperson told her that the jury relied on the victim's credible testimony and the recorded phone calls.

The court authorized interviews with six jurors who consented to the release of their personal identification information. Five of them heard absolutely no discussion about defendant's failure to testify. The sixth juror overheard a comment about

---

[3]    Defense counsel argued, "The question is, has the state proven beyond a reasonable doubt that [Sandra] [is] telling the truth" equating this prosecution to "the Spanish Inquisition, the Salem witch trials [and] the McMartin preschool case."

defendant's failure to take the stand, but that person was told by another juror that they were not allowed to consider the topic, and it was never brought up again.

Based on the investigation, the trial court denied a new trial because "there is no reliable evidence of a substantial discussion during deliberations about the defendant's exercise of his right to remain silent. Rather, it appears that there was a fleeting reference to this fact, which was promptly followed by another juror's admonition that the jury could not consider the defendant's silence at trial. The admonition apparently was effective, as the subject matter was dropped immediately after being raised."

The trial court's denial of a new trial cannot be disturbed absent "'""'a manifest and unmistakable abuse of discretion.'"''" (*People v. Staten* (2000) 24 Cal.4th 434, 466.) "'[W]e accept the trial court's credibility determinations and findings on questions of historical fact if supported by substantial evidence.'" (*People v. Danks* (2004) 32 Cal.4th 269, 304; *People v. Leonard* (2007) 40 Cal.4th 1370, 1425.) "'If we conclude there was misconduct, we then consider whether the misconduct was prejudicial.'" (*People v. Loker* (2008) 44 Cal.4th 691, 747.)

The record reflects that the six jurors who were interviewed after trial denied any consideration of defendant's failure to testify. No one recalled that the topic figured in deliberations. If someone mentioned it, it was promptly discarded as off limits. "It is natural for jurors to wonder about a defendant's absence from the witness stand," and if the comments on this subject were brief, played no role in deliberations, and the jurors were reminded that it is not a proper subject, the presumption of prejudice is rebutted. (*People v. Loker*, *supra*, 44 Cal.4th at pp. 748-749.) A fleeting comment, quickly silenced, "'is not the same as punishing the Defendant for not testifying. It is not the same as drawing negative inferences from the absence of testimony.'" (*People v. Leonard*, *supra*, 40 Cal.4th at p. 1425.)

The court accepted the interviewed jurors' version of their discussions. By contrast, it deemed defense counsel's declaration regarding his brief hallway discussion with the foreperson "to be of limited reliability," imprecise, and "lacking in important

8

detail." We defer to this credibility determination. (*People v. Loker*, *supra*, 44 Cal.4th at p. 749.) Given the transitory nature of the single comment identified by one juror, we conclude that defendant was not prejudiced. A new trial was unwarranted.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.