Filed 4/9/25  P. v. Latanzio CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B330241 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA081803) |
| v. | |
| ANTHONY LATANZIO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Emily Cole, Judge.  Affirmed.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Xiomara Costello and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Anthony Latanzio (defendant) stands convicted of several crimes arising from the molestation of his girlfriend's young daughter.  On appeal, he argues that (1) the trial court erred in excluding evidence that the girlfriend had been molested as a child; (2) the standard jury instruction regarding child sexual abuse accommodation syndrome is incorrect; and (3) his attorney was constitutionally ineffective for not objecting to the prosecutor's closing argument.  Because these arguments lack merit, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**I.    Facts**

### A.    *The family unit*

Defendant started dating his girlfriend in 2019, at a time when the girlfriend's daughter, Jane Doe, was only five years old. Although defendant had his own residence, he spent a lot of time with the girlfriend and Jane Doe at their apartment.

### B.    *Molestation of Jane Doe*

Between 2019 and July 16, 2021, defendant repeatedly engaged in sex acts with Jane Doe.  As Jane Doe consistently recounted to a forensic interviewer, during her preliminary hearing testimony, and during her trial testimony:

— Defendant, while once carrying Jane Doe into the apartment as she pretended to be asleep, pushed his finger into her vagina through her clothes.

— Defendant on more than one occasion inserted his bare finger into Jane Doe's vagina, on more than one occasion

2

placed his mouth directly on her vagina, and on one occasion forced Jane Doe's mouth onto his penis while he watched television.

— Defendant on one occasion inserted his penis into Jane Doe's vagina.

— On July 16, 2021, defendant inserted his bare finger into Jane Doe's vagina and also placed his mouth on her vagina. Amidst these incidents, defendant warned Jane Doe that if she told anyone about what he had done, he would break her pinky finger.

On July 16, 2021, the girlfriend returned to the apartment after running errands, and noticed defendant standing near Jane Doe in the bathroom. The girlfriend noticed something was "off" and thought defendant had a "guilty demeanor to him." The girlfriend took Jane Doe aside and asked her what had happened, and Jane Doe hesitantly reported that defendant had hurt her and pointed to her private parts when asked "where." The girlfriend immediately left the apartment with Jane Doe, but defendant followed them in his car until the girlfriend drove to the local sheriff's station. A forensic nurse examined Jane Doe, and noticed that her underwear was bloody and that she had multiple abrasions around her vagina consistent with physical trauma.

Defendant's DNA was found on Jane Doe's vaginal area, and Jane Doe's DNA was found under defendant's fingernails, on his hand, and on his penis.

## II. Procedural Background

The People charged defendant with four separate counts aligning with the four separate categories of conduct described above—namely, (1) committing a lewd act upon a child 14 years

3

old or younger (Pen. Code, § 288, subd. (a)),[1] (2) oral copulation or sexual penetration of a child 10 years old or younger (§ 288.7, subd. (b)), (3) sexual intercourse or sodomy with a child 10 years old or younger (§ 288.7, subd. (a)), and (4) oral copulation or sexual penetration of a child 10 years old or younger (§ 288.7, subd. (b)).

The matter proceeded to trial in February and March 2023.

At trial, defendant testified and flatly denied committing any of the charged acts. Defendant claimed that he and the girlfriend had a bad fight just before July 16, 2021. Defendant's ex-wife and a childhood friend testified that defendant had been in the presence of children without sexually molesting them. Defendant called two expert witnesses, one who opined that DNA is easily transferable, and another who opined that child witnesses are easily suggestible.

A jury found defendant guilty of all charges.

The trial court sentenced defendant to 61 years to life in prison. Specifically, the court imposed a base term of 25 years to life on the sexual intercourse count; two consecutive 15-year terms, one for each of the two oral copulation or sexual penetration counts; and a consecutive six-year sentence on the lewd conduct count.

Defendant filed this timely appeal.

## DISCUSSION

## I. Exclusion of Evidence That the Girlfriend Was a Victim of Molestation as a Child

Defendant argues that the trial court erred in not allowing

---

1    All further statutory references are to the Penal Code unless otherwise indicated.

4

him to question the girlfriend about whether *she* had been molested as a child. According to defendant, this evidence was relevant to "impeach" the girlfriend and Jane Doe because the girlfriend's prior victimization (1) "would explain why [she] would overreact when she saw [defendant] and Doe standing by the bathroom" on July 16, 2021, and (2) would demonstrate that the girlfriend "coached" Jane Doe to testify falsely.

## A.    *Pertinent facts*

Prior to trial, the prosecutor moved in limine to exclude any evidence that the girlfriend had been molested as a child. After confirming that there was no evidence that the girlfriend ever told Jane Doe about her victimization, the trial court excluded evidence of the girlfriend's victimization on two grounds. First, the court ruled that the evidence was not relevant. The court explained that defendant could question the girlfriend "about suggestibility[ and] planting ideas in [Jane Doe's] head" and could "even suggest that [the girlfriend] was paranoid," but ruled that the girlfriend's *reasons* for trying to suggest testimony, to plant ideas, or for being paranoid were not relevant: "The suggestability [itself] is relevant," the court summed up, but the reason why the girlfriend would try to suggest testimony or was paranoid was not. Second, the court ruled that even "if there is any relevance whatsoever, it is so tangential and does not outweigh the prejudicial value" under Evidence Code section 352.

## B.    *Analysis*

Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) "[A] trial court has broad discretion to exclude [relevant] evidence 'if its probative value is substantially outweighed by the probability

5

that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.'" (*People v. Peoples* (2016) 62 Cal.4th 718, 757, quoting Evid. Code, § 352.) We review a trial court's evidentiary rulings for an abuse of discretion. (*People v. Harris* (2005) 37 Cal.4th 310, 337 [relevance]; *People v. Clark* (2016) 63 Cal.4th 522, 584 [discretionary exclusion of unduly prejudicial evidence].)

The trial court did not abuse its discretion in excluding evidence that the girlfriend had been the victim of sexual molestation as a child. To be sure, and as the trial court noted, whether the girlfriend coached Jane Doe to lie and whether the girlfriend overreacted might be relevant to impeach Jane Doe's testimony and to impeach the girlfriend's testimony, respectively. For these purposes, what matters are the *facts* of whether the girlfriend was suggesting what Jane Doe should say and whether the girlfriend overreacted. But *why* the girlfriend would be particularly knowledgeable about molestation and *why* she overreacted—which is what the girlfriend's prior victimization was proffered to show—has, at best, marginal relevance. (Accord, *People v. Adames* (1997) 54 Cal.App.4th 198, 208-209 [evidence of alleged molestation of victim's mother as a child properly excluded because it "would have created confusion regarding the real issue, i.e. did [the defendant] molest [the victim]"].) When weighed against the danger of embarrassing and harassing the girlfriend as well as distracting the jury with the fact of the girlfriend's childhood molestation, the court did not abuse its discretion in concluding that these dangers substantially outweighed that minimal probative value under Evidence Code section 352. (Evid. Code, § 765, subd. (a) ["[t]he court shall . . .

6

protect the witness from undue harassment and embarrassment"].)  Because the exclusion of this evidence was appropriate under the Evidence Code, its exclusion also did not violate defendant's right to present a defense or right of confrontation.  (*People v. Mincey* (1992) 2 Cal.4th 408, 440 ["[a]pplication of the ordinary rules of evidence . . . does not impermissibly infringe on a defendant's right to present a defense"]; *People v. Cooper* (1991) 53 Cal.3d 771, 817 ["trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant"].)

Defendant resists this conclusion with three arguments. First, defendant argues that he would not have inquired about the *details* of the girlfriend's prior victimization.  Keeping the inquiry at a more general level, however, does not make the evidence any more relevant or ameliorate the prejudice arising from its admission.  Second, he argues that the girlfriend's prior victimization clouded her perception.  For support, defendant cites the testimony of his expert that the "experiences and . . . perception" of the persons who question a child victim "can come to influence the child's statement" about the crime "[t]o the extent that those get communicated to the child."  But neither this testimony nor any other evidence supports defendant's assertion that being molested in the past affects one's perception of events the witness is relaying.  Indeed, the passage defendant cites *supports* the trial court's ruling insofar as the expert opined that a questioner's prior experience can influence a child victim to fabricate "[t]o the extent [those experiences] get communicated

7

to the child"—but here, the girlfriend's victimization was never communicated to Jane Doe. Third, defendant argues that the prosecutor exploited the trial court's exclusion of the evidence of the girlfriend's molestation because, in closing argument, the prosecutor argued that the girlfriend, upon seeing defendant and Jane Doe on July 16, 2021, "just freaks out . . . . Why would she just freak out because they're both standing by the bathroom? That doesn't make any sense." Defendant takes this passage out of context: This passage was in the course of the prosecutor explaining why *defendant's* testimony was not reasonable when defendant claimed that the girlfriend's reaction was based solely on where he and Jane Doe were standing when the girlfriend got home; the prosecutor explained that the girlfriend had a basis for "freak[ing] out"—namely, that she could "tell when something's off, when someone's trying to hide something."[2]

---

2    In full, this portion of the closing argument reads as follows:

> "Now, how reasonable is the defendant's testimony? His testimony essentially is that he never touched [Jane Doe]. How reasonable is it, when you consider [the girlfriend's] actions, her reactions, when she got home?
>
> So she comes home. She sees the defendant close to the bathroom in the hallway, and she sees [Jane Doe] close to the bathroom, and she just freaks out. This is someone she's dated for two years, who she's left home alone with [Jane Doe] before, who – again, she – they seem to have a good relationship. Why would she just freak out because they're both standing by the bathroom? That doesn't make any sense.

8

## II. Propriety of Standard Instruction on Child Sexual Abuse Accommodation Syndrome

Defendant argues that the trial court erred in giving the standard instruction explaining how a jury may properly consider expert testimony on child sexual abuse accommodation syndrome (CSAAS) because that instruction improperly "advised the jurors that they may consider the CSAAS testimony in evaluating the complaining witness's veracity." We review instructional errors de novo. (*People v. Lewis* (2023) 14 Cal.5th 876, 900.)

Expert testimony on CSAAS is admissible if (1) the testimony is "tailored to address the specific myth[s] or misconception[s] suggested by the evidence" in terms of how children react to sexual abuse, and (2) the jury is instructed that "the expert's testimony is not intended and should not be used to determine whether the victim's molestation claim is true."

---

Clearly, she gets home and she sees a look on his face and on [Jane Doe's] face that let[s] her know something's not right. We all have partners in our lives or friends, probably even interacted with children if you don't have children of your own, you can tell when something's off, when someone's trying to hide something. [The girlfriend] had just got home, on her way back home, when all of this is going on, when [Jane Doe's] changing her underwear, and the defendant gave her underwear to change into when [Jane Doe] noticed she was she was bleeding.

When you catch someone when something's going on, they have something to their face. There's an energy that you can feel. Why would [the girlfriend] just overreact just by seeing them standing there?"

9

(*People v. Wells* (2004) 118 Cal.App.4th 179, 188; *People v. Bowker* (1988) 203 Cal.App.3d 385, 391-394; *People v. McAlpin* (1991) 53 Cal.3d 1289, 1301 (*McAlpin*).) Here, the People called an expert witness who testified that, contrary to expectations, children often wait months or years to report sexual abuse, and often give inconsistent accounts that lack specifics; the expert further testified that she had not interviewed Jane Doe and had not reviewed the record in this case. The trial court also instructed the jury with the standard jury instruction, CALCRIM No. 1193, as follows:

> "You have heard testimony from [the expert] regarding child sexual abuse accommodation syndrome.
>
> [The expert's] testimony about child sexual abuse accommodation syndrome is not evidence that the defendant committed any of the crimes charged against him.
>
> You may consider the evidence only in deciding whether or not [Jane Doe]'s conduct was not inconsistent with the conduct of someone who has been molested, and in evaluating the believability of her testimony."

The trial court did not err in giving the standard CALCRIM No. 1193 instruction in this case. Earlier in the case, defendant had questioned Jane Doe's veracity partly on the basis of her delayed disclosure of the abuse by defendant and partly on the basis of her inability to remember exact details and dates. Thus, there was an evidentiary basis for the instruction. Further, the standard CALCRIM No. 1193 instruction has been uniformly upheld as valid. (*People v. Gonzales* (2017) 16 Cal.App.5th 494,

10

503-504; *People v. Lapenias* (2021) 67 Cal.App.5th 162, 175-176; *People v. Munch* (2020) 52 Cal.App.5th 464, 473-474; *People v. Ramirez* (2023) 98 Cal.App.5th 175, 219-220.)

Defendant makes what boils down to two arguments. First, he urges that CSAAS evidence is not admissible to prove a child sex victim's credibility. He is wrong. The precedent establishes that CSAAS evidence cannot be used to prove that the victim is telling the truth, but can be used to show that their counter-intuitive behavior is not inconsistent with telling the truth; in other words, CSAAS evidence does appropriately bear on the victim's credibility in some respects. (*McAlpin*, *supra*, 53 Cal.3d at p. 1302.) Second, defendant urges us to reject this precedent. Given that some of it comes from our Supreme Court, we cannot do so. (*Auto Equity Sales v. Superior Court* (1942) 57 Cal.2d 450, 455-456.) We agree with the lower court precedent in any event.

## III. Ineffective Assistance of Counsel for Not Objecting to Prosecutor's Closing Argument

Defendant argues that his trial counsel was constitutionally ineffective because she did not object to a portion of the prosecutor's closing argument in which the prosecutor impermissibly vouched for the credibility of Jane Doe.

### A. *Pertinent facts*

During closing argument, the prosecutor addressed Jane Doe's credibility in the following passages:

"So [Jane Doe] has no reason to lie in this case. There's no reason for her to lie. From the outside looking in, the defendant was nothing but nice to her, right. He bought her gifts. He played games with her. He bought her jewelry. He took her on trips. He treated her like his own child. He never wanted

11

her to get left out.  Why would she lie?  Sounds like a good relationship.  Maybe you say, well, she didn't want to lie.  Maybe [the girlfriend] told her to lie. But that doesn't really make any sense either.

    . . .

    As far as the prior consistent statements, overall, [Jane Doe] was very consistent about the abuse and the different ways th[at defendant] abused her.  How you can use this again ties back into, because she was consistent in the past and she's been consistent here, she's overall consistent, what she says in court you should believe it.  It's believable because she's been consistent this whole time." Defendant did not object to either argument.

**B.**    *Analysis*

Because a claim of prosecutorial error in closing argument is preserved for appeal only if a defendant objects and seeks a jury admonition (*People v. Crew* (2003) 31 Cal.4th 822, 839), and because defendant neither objected to nor sought a jury admonition with respect to the portions of the prosecutor's closing argument challenged on appeal, defendant has recast his argument as a claim of ineffective assistance of counsel—namely, that his lawyer was ineffective for not objecting and seeking a jury admonition.  "To establish that counsel was constitutionally ineffective, a criminal defendant must show that (1) counsel's performance was 'deficient' because it """"fell below an objective standard of reasonableness . . . under prevailing professional norms"""""; and (2) but for that deficient performance, there is a 'reasonable probability . . . the outcome of the proceeding would have been different.'" (*People v. Washington* (2017) 15

Cal.App.5th 19, 25, quoting *People v. Mickel* (2016) 2 Cal.5th 181, 198.)  Establishing ineffective assistance of counsel on direct appeal is particularly "difficult" because courts "presum[e] that counsel's actions" are reasonable and because the "record on appeal may not explain why counsel chose to act as he or she did." (*Mickel*, at p. 198.)  The decision not to make a meritless objection is neither deficient performance nor prejudicial.  (*People v. Lucero* (2000) 23 Cal.4th 692, 732.)  We independently review claims of ineffective assistance of counsel.  (*People v. Mayfield* (1993) 5 Cal.4th 142, 199.)

Defendant's counsel was not constitutionally ineffective for not objecting to the prosecutor's closing argument because such an objection would have been meritless.  "'A prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record.' [Citation.]  Similarly, "'[i]mpermissible 'vouching' may occur where the prosecutor places the prestige of the government behind a witness through personal assurance of the witness's veracity or suggests that information not presented to the jury supports the witness's testimony.'" [Citation.]  'However, so long as a prosecutor's assurances regarding the apparent honesty or reliability of prosecution witnesses are based on the "facts of [the] record and the inferences reasonably drawn therefrom, rather than any purported personal knowledge or belief," [the prosecutor's] comments cannot be characterized as improper vouching.'" (*People v. Wright* (2021) 12 Cal.5th 419, 446-447; *People v. Seumanu* (2015) 61 Cal.4th 1293, 1330.)  Here, the prosecutor's argument regarding Jane Doe's credibility is based wholly on evidence presented at trial—the gifts defendant bought Jane Doe,

the time he spent with her, and the consistency of Jane Doe's statements over time. At no point did the prosecutor suggest that she was personally vouching for Jane Doe's credibility or that the prosecutor had information outside the record supporting Jane Doe's credibility.

## IV. Cumulative Error

Defendant lastly argues that the foregoing errors at his trial cumulatively warrant vacating his convictions. Because we conclude that the trial court and defense counsel committed no prejudicial error, there is no error to cumulate. (*People v. Carpenter* (1999) 21 Cal.4th 1016, 1064.)

### DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P. J.

HOFFSTADT


We concur:


_____, J.

MOOR


_____, J.

KIM (D.)

14